## Case No. 13,600.

SULLIVAN et ux. v. WINTHROP et al.

[1 Sumn. 1.] [1]

Circuit Court, D. Massachusetts. May Term, 1829.

WILLS — PECUNIARY LEGACY — WHEN PAYABLE— INTEREST—EXCEPTIONS—PAYMENT PRO TANTO—EXECUTORS.

1. Interest commences on a pecuniary legacy at the expiration of one year from the decease of the testator, whatever may be the posture of the estate, unless some other period is specified in the will.

[Cited in Hamilton v. McQuillan, 82 Me. 209, 19 Atl. 167; Loring v. Woodward, 41 N. H. 393; Davison v. Rake, 45 N. J. Eq. 767, 18 Atl. 753; Esmond v. Brown (R. I.) 25 Atl. 653. Cited in brief in Vermont State Baptist Convention v. Ladd, 58 Vt. 100, 4 Atl. 634.]

2. The cases of infant children not otherwise provided for, and of adopted children under age, not otherwise provided for, are exceptions to the general rule.

[Cited in brief in Howland v. Howland, 11 Gray, 475. Cited in Howard v. Francis, 30 N. J. Eq. 448.]

---

[1] [Reported by Charles Sumner, Esq.]

3. Executors may at their discretion pay over legacies at any time within the year.

4. Where the executors invested certain sums, less than the whole amount of the legacy, in the name of the legatee; held, that this was a payment of the legacy pro tanto, and that the interest accruing upon these sums, within the year from the time of such investment, belonged to the legatee.

[Cited in brief in U. S. v. Bayard, 4 Mackey, 312; Allen v. Tarbell, 65 Vt. 151, 26 Atl. 65.]

Bill in equity, the object of which was to ascertain the right of the plaintiffs to interest on a legacy of 20,000 dollars, bequeathed her by the will of Mrs. Sarah B. Dearborn. There being no important facts in dispute between the parties, the cause was set down for a hearing by consent upon the bill and answers, and was argued by William Sullivan, for plaintiffs, and by Hubbard, for defendants.

The bill was in substance as follows:—That Mrs. Sarah Bowdoin, while she was the wife of the late James Bowdoin, Esq., did, with his consent, adopt Sarah B. Sullivan, one of the complainants, as her child from an early age. and educated and maintained her as such, until the time of her marriage with said George; and continued to treat said complainant as her child up to the time of her own decease. That on the 18th of July, 1812, said Sarah Bowdoin, being a widow and having a large real and personal estate, made her will. That on the 10th of November, 1813. Mrs. Bowdoin, in contemplation of marriage with Henry Dearborn, Esq., entered into articles of agreement, which provided among other things, that the will of Mrs. Bowdoin should not be revoked by the marriage. That the marriage was solemnized on the same 10th day of November, and that the testatrix Mrs. Dearborn died on the 23d day of May, 1826, and that her will was proved on the 12th day of June following (Thomas L. Winthrop and Richard Sullivan, Esqs., the respondents, being the executors, and being trustees of $20,000 given by the will to Mrs. Sarah B. Sullivan). That in the month of July, 1826, the complainant, George Sullivan, asked payment of the executors and trustees of the interest on $20,000, and on the 25th of July $600 were paid, for which a receipt was given in these terms. "Received of Thomas L. Winthrop and Richard Sullivan, Esqs., trustees of Mrs. Sarah B. Sullivan, my wife, the sum of six hundred dollars, to be charged in account as interest money on the fund bequeathed to Mrs. Sullivan by the late Mrs. Dearborn. New York, 25 July, 1826. George Sullivan." That in August, September, and November, 1826, Messrs. Winthrop and Sullivan, the defendants, as trustees under the will, invested in mortgage and otherwise $20,000 in trust for Sarah B. Sullivan; and that the same trustees received the interest and income of the funds from which that investment was made from the testatrix's decease to the time of such investment and ever since. That the complainants had demanded the interest on said $20,000 from the time of the decease of the testatrix, but the trustees had declined paying it, because James Bowdoin, the residuary legatee, claimed to have the whole income and interest of the testatrix's estate for the year following her decease. The complainants charged that the intention of the testatrix was, that the said Sarah B. Sullivan should have the income of said $20,000 from the time of her decease, and that the trustees, and the said residuary legatee, knew this to be her intention. That the executors paid the legacies given by the will, within the year following the testatrix's decease. and did assent to the execution of the will, by making the investment to the use of the complainants, and paying a part of the interest within the year.

The answers of the defendants were made separately, and admitted the principal facts stated in the bill; not admitting, however, that Mrs. Sarah B. Sullivan was ever formally adopted by the testatrix as her child, or that it was intended by the payment of the $600 to the complainants to decide on the right of the residuary legatee;—as evidence of which the following receipt was introduced: "Boston, Nov. 17, 1826. Received of the executors of the last will of the late Mrs. Sarah Bowdoin Dearborn, deceased, $472.67, which sum, with $600 received in July last, appears to be the amount of interest to the 24th Nov. inst. on the two legacies of $20,000 each, bequeathed by Mrs. Dearborn to my wife, Sarah Bowdoin, and my son, James Bowdoin; and I hereby promise and agree, that if it be found on investigation that the legatees abovenamed are not legally entitled to interest as paid over from the day of the decease of the testatrix, and Mr. Webster should so decide, in such event I hereby authorize the said executors, who are also trustees to the abovenamed legatees, to deduct the aforementioned sums of $600 and $472.67 from the interest money now accruing on sums invested, or which may hereafter accrue, when the said legacies shall be fully placed on interest, or any part of said sums according to law, or as said Webster shall decide may be. (Signed) George Sullivan."

The clause in the will of Mrs. Dearborn, giving the said $20,000 to Mrs. Sarah B. Sullivan, appears in the opinion of the court. The marriage articles, referred to in the bill, recite among other things, that Sarah Bowdoin "had conveyed and transferred all her property, real and personal, unto Thomas L. Winthrop and Richard Sullivan, in trust; to pay over the income and interest to her use during coverture, and in case said Henry Dearborn shall survive said Sarah, then forthwith upon her decease, to convey and transfer the same, by good and sufficient instruments of conveyance, to such person or persons as she may have appointed, and to whom she may have devised the same, by

her last will and testament," "such will to be construed according to the most obvious meaning and intent. as expressed therein, without regard to technical or formal inaccuracies therein."

William Sullivan, for complainants, contended:

(1.) That the will and the marriage articles were to be taken together, and constituted but one instrument. That the will provided who should take, and how much; and the articles provided when the bounty should be taken. That the will would have been revoked by the marriage, if not protected by the articles. That in consequence of the marriage contract, the will became a testamentary appointment by a feme covert, and its validity and effectiveness depended upon the articles. That the respondents, Messrs. Winthrop and Sullivan, were to be regarded in relation to this matter solely in the light of trustees, and not as executors. They were not called upon in this suit to execute a will, but to perform a trust. Middleton v. Crofts, 2 Atk. 661; Southby v. Stonehouse, 2 Ves. Sr 611; Sugd. Powers, 331; Bradish v. Gibbs, 3 Johns. Ch. 548; Osgood v. Breed, 12 Mass. 525. That if the will and the marriage articles were so to be taken together as contended for, then the only question was when the bounty should be enjoyed, and this was repeatedly provided for in the articles. Besides which the condition of the estate (the whole being invested and productive); the relations which the parties sustained to each other; the absence of all claims on the estate which could impede an immediate distribution and settlement, show conclusively the intention of the parties who had the power to order a disposal. That the respondents (trustees) show by their conduct, that they thus understood the intentions of Mrs. Dearborn. They paid the legacies generally within the year. They made investments within the year to the use of Mr. Sullivan, the complainant; and if they were to be considered merely in the light of executors, they thus assented to the claim of the complainants. and could not now retract that assent. 1 Rop. Leg. 505.

(2.) That, although it was admitted to be the general rule of law, that executors shall be allowed one year in which to pay pecuniary legacies. and that interest was to commence from the end of that year, still it was contended that this rule was made solely for the protection of executors, and the general benefit of the estate administered upon, to protect executors from improvident and erroneous payments, to enable them to obtain a competent knowledge of the situation of the property, to pay off debts and effect abatements if the assets were deficient. That it was a rule which the executors might waive if they thought fit, and that it was their duty so to waive it whenever an immediate settlement and distribution could be effected That it was neither equitable nor reasonable that a rule, made for the protection of executors and the benefit equally of all persons interested in an estate, should be so applied by the executors, without any necessity on their part. as to benefit the residuary legatee at the expense of all the other legatees. But. however general might be the application of this rule when no time of payment was fixed by the testator, yet when his intentions on this point were plainly expressed or could be satisfactorily inferred, and the rights and convenience of the executors admitted of their observance, they must govern. That, in the case before the court, such was the situation of the property that it might be immediately and conveniently distributed; and the condition of the estate, the relation of the parties to each other, and the acts of the executors plainly indicated what was considered to be the intention of the testatrix But if the marriage articles were to be received as explanatory of the will, then the intention of the testatrix was fully expressed by the terms, "forthwith upon Mrs Bowdoin's decease." Sitwell v. Bernard, 6 Ves. 539; Entwistle v. Markland, Id. 528; Stuart v. Bruere, Id. 529; Fearns v. Young, 9 Ves. 549; Gibson v. Bott, 7 Ves. 89; Hutchin v. Mannington, 1 Ves. Jr. 366. That, in connexion with these circumstances, the particular relationship which the complainant, Mrs. Sullivan, bore to the testatrix was to be taken into consideration, as presenting a substantial reason for the intention of the testatrix, that the legacy left to her should bear interest from the time of the testatrix's decease.

It was further contended by Mr. Sullivan that this bequest, under the circumstances, might be considered an annuity, in which case a year's interest would be payable to the annuitant at the expiration of one year from the decease of the testatrix.

Hubbard, for respondents, contended:

That the law was perfectly settled, that where a legacy is given generally out of the personal estate. and no time specified for the payment of it by the testator, it was not payable until the end of a year from the death of the testator, and that interest was not to be allowed upon it until after that period. Bird v. Lockey, 2 Vern. 745; Smell v. Dee, 2 Salk. 415; Bilson v. Saunders, Bunb. 240; Maxwell v. Wettenhall; 2 P. Wms. 26; Lloyd v. Williams, 2 Atk. 109; Beckford v. Tobin, 1 Ves. Sr. 310; Hutchin v. Mannington, 1 Ves. Jr. 366; Bourke v. Ricketts. 10 Ves. 333; Wood v. Penoyre, 13 Ves. 326; Pearson v. Pearson, 1 Schoales & L. 10; Eyre v. Golding, 5 Bin. 475; Shobe v. Carr, 3 Munf. 10; Lupton v. Lupton, 2 Johns. Ch. 628; Van Bramer v. Hoffman, 2 Johns. Cas. 200. That, this general principle being clear, the question was whether there was any thing in the case at bar to exempt it from the operation of the principle.

That this was not an annuity, but a general devise of a sum of money to be laid out in a particular manner. That it was a legacy by the terms of it, and the trust was to cease on the death of the husband, when the widow and her children might spend the principal immediately if they pleased. ·Chief Justice Tilghman says, in Eyre v. Golding, 5 Bin. 475: "There is a difference between a legacy of a sum of money to one for term of life, and a bequest of a sum to be paid annually for life. In the former case, the legacy, not being payable till the end of a year from the testator's death, carries no interest for that year; but in the latter, the first payment of the annuity must be made at the end of the first year." That no intention of the testatrix, that interest should be paid on this legacy from the time of her decease, could be fairly inferred from any expressions used in the marriage articles. That there was nothing in the case to prove that Mrs. Sarah B. Sullivan was an adopted daughter of the testatrix, legally speaking; nor could the reason, which governs the payment of interest to a child, upon a legacy from its parent, during the first year after the parent's decease, be applied in this case, viz. the obligation of the parent to support the child. The complainant in this instance was married long before the decease of the testatrix, and was living entirely independent of her. That no assent of the executors to the payment of interest could be inferred, taking all the circumstances of the case into view, nor would such an assent now avail the complainants.

STORY, Circuit Justice. On the 18th of July, 1812, Mrs. Sarah Bowdoin made her will, and, and, among other bequests, made the following: "I give and devise to my beloved, affectionate, worthy niece, Mrs. Sarah Bowdoin Sullivan, wife of George Sullivan, Esq., of, &c. (who are the plaintiffs), for and during her natural life, all my real estate in Milk street, &c.; and at her death I give the said estate to her second son, James Bowdoin Sullivan, &c. &c." "I give and devise to Thomas L. Winthrop, Esq., and Richard Sullivan, Esq., of, &c. (who are named executors of her will), and their heirs, in trust, for my said affectionate niece, Mrs. Sarah Bowdoin Sullivan, the sum of 20,000 dollars, to her and her children for ever. It is not for want of regard or attachment to George Sullivan, Esq., husband to my said niece, that I give the said 20,000 dollars in trust for her during her marriage state, but only on account of the uncertainty of all human events; therefore, it is intended as friendship to him, as well as to his said wife." The testatrix then proceeds to bequeath to Mrs. Sullivan her household furniture, and wines, and part of her family linen, wearing apparel, jewelry, plate, &c. &c. The testatrix in November, 1813, in contemplation of a marriage with General Henry Dearborn (which soon afterwards took effect), entered into certain marriage articles, to which he was a party, one principal object of which was to secure the disposition of her property in conformity to her said will. In these articles reference is made to the will, and it is added: "Such will to be construed according to the most obvious meaning and intent of her, said Sarah, as expressed therein, without regard to technical or formal inaccuracies therein." I will only remark in passing, that these words can have no effect to change the construction to be put by the court upon the bequests and devises in the will, since they express no more than the law itself would imply in cases of this nature. Nor does it make any difference in the construction of this will, that it now has effect in virtue of these articles, and not proprio vigore. It must be still construed, in the same manner as it originally was designed to be, as a will; for otherwise, the same paper would at different times, though unaltered, require different interpretations.

Mrs. Dearborn died in May, 1826, leaving General Dearborn her survivor. After her decease, the executors proved the will and took out administration upon her estate. Some time afterwards a question arose between the plaintiffs and the executors, whether the legacy of 20,000 dollars to Mrs. Sullivan was to carry interest from the death of the testatrix, or from a year after her death. It was finally submitted by them to the decision of the Hon. Daniel Webster, who decided that the legacy carried no interest until after the year. By the consent of all parties, and especially of the residuary legatee and devisee (who is one of the defendants in the present bill), that award is now surrendered as a defence, and the cause is agreed to be decided in the same manner, as if it had never been made. All consideration of it may, therefore, at once be laid out of the case.

There are some circumstances alluded to in the bill and answers, which are relied upon by the parties, but upon which I shall not dwell, because they do not, in my judgment, touch the merits of the present controversy. Such, for instance, is the suggestion, that Mrs. Sullivan was adopted as a daughter by Mrs. Dearborn, being in fact a grand niece. Such an adoption is denied by the answers, and is not established in point of fact; and the language of the will discloses sufficiently, that the legacy is to her as an "affectionate niece," and not, as a daughter, the main or exclusive object of her bounty. Again, the payment of money by the executors within the year to Mr. Sullivan, in part of the interest or income on the 20,000 dollars, is relied on. But that payment under the circumstances of this case cannot be conclusive upon the residuary legatee; and indeed is yielded up as conclusive by the subsequent receipt and agreement of Mr. Sullivan himself.

Then again, the fact, that the personal estate of the testatrix yielded a full interest or income within the year, or sufficient at least to meet the interest upon the pecuniary legacy of Mrs. Sullivan, is not material; for her right does not depend upon the actual posture of the estate in this particular; but upon the general principles of law. Neither is it material, whether the testatrix owed many debts or none; or whether the funds or assets were within the immediate reach of the executors, or time must elapse before they could be got in. In Gibson v. Bott, 7 Ves. 89, 95, Lord Eldon said: "In the common case of debts and legacies the same rule (as to interest) is applied to cases, where the debts cannot be arranged for ten years, and where there are no debts, and the money is immediately tangible in the funds." And in Pearson v. Pearson, 1 Schoales & L. 10, Lord Redesdale observed, that the legacy is payable out of a fund, which is yielding profits, makes no difference. "Nothing," said he, "can be more settled than that a man's saying, 'I direct all my stock to be applied to the payment of legacies,' will not make those legacies bear interest one moment sooner than they otherwise would. Whether the fund bears interest or not, is totally immaterial in the case of pecuniary legacies." And he stated a case, where the fund did not become disposable for the payment of legacies till near forty years after the death of the testator, and yet the legacies were held to bear interest from the year after the testator's death. There are many cases to the same effect, and it would be a waste of time to go over them. Gibson v. Bott, 7 Ves. 89, 92; 1 Hov. Supp. 42; note to 1 Ves. Jr. 366; Wood v. Penoyre, 13 Ves. 325, 333; Toll. Ex'rs, B. 3, c. 4, p. 324; 2 Hov. Supp. 7, note to 7 Ves. 89; 2 Rop. Leg. c. 15, p. 172 et seq. Webster v. Hale, 8 Ves. 410, is a strong application of the principle; for, there, interest was denied upon a legacy until after one year, although the testator directed it to be paid to the legatee "as soon as possible."

The present is not the case of an annuity, (though it has been suggested at the bar, that it may possibly so be construed,) for that supposes an annual sum payable for years or life, and not, as here, a gross sum bequeathed to the use of Mrs. Sullivan and her children for ever. The bequest is of the 20,000 dollars, and not of the mere income of that sum for a limited period. It is a final and absolute gift of the principal. I agree, that, in the case of an annuity, interest runs from the death of the testator; for otherwise the annuitant would not receive any payment for the first year, and the intention of the testator is presumed to be, that the annuitant should receive for every year. Gibson v. Bott, 7 Ves. 89, 97; Eyre v. Golding, 5 Bin. 472; Toll. Ex'rs, B. 3, c. 4; Fearns v. Young, 9 Ves. 553; Houghton v. Franklin, 1 Sim. & S. 392; Storer v. Prestage, 3 Madd. 167. Nor is this the case of a specific legacy of property or funds earning interest. If it were, I agree, that whoever is entitled to the specific property or fund is entitled to the income or increment, as an adjunct. Barrington v. Tristram, 6 Ves. 345; 2 Rop. Leg. c. 15, p. 173; Id. (White's Ed.) p. 188, c. 20, § 1; Sleech v. Thorington, 2 Ves. Sr. 560, 562; Raven v. Waite, 1 Swanst. 553; Webster v. Hale, 8 Ves. 410; Kirby v. Potter, 4 Ves. 748, 751.

But this is the case of a pecuniary legacy; and no time of payment, and no interest, are provided for by the terms of the will. The general rule certainly is, that, where no time of payment is provided for by the terms of the will, a pecuniary legacy is payable at the end of the year after the testator's death, and not before. Lord Hardwicke, in Beckford v. Tobin, 1 Ves. Sr. 308, stated the rule as clear in chancery, and said, it was taken from the ecclesiastical court, which gave the executor a year to get in the estate, and pay the legacy, before he should be compelled to account. Lord Redesdale, in Pearson v. Pearson, 1 Schoales & L. 10, attributes the same origin to it. But whatever may be the origin of the rule, it is irrevocably fixed as a general rule, and is not now open to controversy. It doubtless was founded in the convenience of having a fixed period, applicable to cases in general, which, if it operated injuriously upon some legatees, was beneficial to others; and it reduces to a certainty, what might otherwise be a fluctuating exercise of discretion in the executor, or the court, and involve the parties in a protracted litigation upon the nice investigation of the circumstances of each particular estate. As a corollary from this rule, it has been as constantly held, that interest is not payable upon any pecuniary legacy (unless provided for by the will) until after the year is elapsed; or, if the will fixes a period for payment, until that period is elapsed; for interest cannot be claimed except for a demand actually due, and from the time it becomes due. Sitwell v. Bernard, 6 Ves. 520, 529. That such is the general rule, is admitted on both sides in the argument at the bar, and indeed is established by numerous authorities. 1 Hov. Supp. 143, 144; 2 Rop. Leg. c. 15, p. 172; Id. (White's Ed.) c. 20, p. 184; Heath v. Perry, 3 Atk. 101; Hearle v. Greenbank, 3 Atk. 695, 716; Lloyd v. Williams, 2 Atk. 108; Maxwell v. Wettenhall, 2 P. Wms. 26. It is not unimportant to notice, that it has been fully recognised by the supreme court of Massachusetts in Dawes v. Swan, 4 Mass. 208.

There are exceptions, however, to the general rule. One is, when a legacy is given by a parent to an infant child, who is otherwise unprovided for; for then, upon the presumed intention of the parent to fulfil his moral obligation to maintain his child, interest will be allowed from the death of the testator as a maintenance for the child, where no other fund is applicable for such maintenance. And this is equally true, whether a future

time is fixed for the payment of the legacy, or no time is fixed for it by the will. But if other funds are provided for the maintenance of the child, then interest is only allowable as in other cases. Heath v. Perry, 3 Atk. 101; Mitchell v. Bower, 3 Ves. 287; Harvey v. Harvey, 2 P. Wms. 22; Crickett v. Dolby, 3 Ves. 10; Lowndes v. Lowndes, 15 Ves. 304; Lambert v. Parker, Coop. 143; Cary v. Askew, 1 Cox, Ch. 244; 2 Rop. Leg. (White's Ed.) p. 192, c. 20, § 4. The same doctrine, which applies to parents, is also applied to testators placing themselves in loco parentis; though perhaps upon the cases the distinction is sometimes very nice, if not evanescent, as to what constitutes the assumption of such a relation. Acherley v. Wheeler, 1 P. Wms. 783, and Churchill v. Speake, 1 Vern. 251, are supposed to have proceeded upon this ground; as Beckford v. Tobin, 1 Ves. Sr. 309, and Hill v. Hill, 3 Ves. & B. 183, most assuredly and satisfactorily did. But the exception is not allowed in favor of a legatee standing in the relation of a wife, or natural child, or grandchild, or niece, as such, any more than in favor of a stranger, unless there can be farther engrafted upon it a parental relation assumed by the testator. Haughton v. Harrison, 2 Atk. 329; Crickett v. Dolby, 3 Ves. 10; Stent v. Robinson, 12 Ves. 461; Lowndes v. Lowndes, 15 Ves. 301; Perry v. Whitehead, 6 Ves. 544, 546; and Lupton v. Lupton, 2 Johns. Ch. 614, are fully in point. And whoever wishes to go more fully into this matter, will find all the cases well summed up in Mr. White's late and very valuable edition of Rop. Leg. in chapter 20 of the second volume. Now, I have already suggested, that it is not made out upon the face of the present will, or otherwise, that Mrs. Dearborn did at the time of the will stand to Mrs. Sullivan in loco parentis. She was doubtless a favorite niece; but Mrs. Dearborn's bounty appears to have extended, upon the face of her will, very liberally to others standing in the same or other near relations. But, what is most material to consider is, that Mrs. Sullivan was at this time married; and her husband is still living, and it is not pretended (and indeed, if one might travel out of the record, or consult the answers, it could not be pretended), that he was not able to maintain her. It is not asserted (and from Mr. Bowdoin's answer, I am led to presume, that the fact was otherwise), that she was not at that time of age. She certainly was much beyond that period at the time of the testatrix's death. Now, the principal ground, upon which interest is allowed to children and other persons, to whom a testator stands in loco parentis, is, that they are infants, and require a maintenance. No case can be produced, (as I believe,) where interest has been given in favor of a female married legatee, having a competent maintenance; or in favor of an adult child; for the law supposes an adult capable of maintaining himself. In Raven v. Waite, 1 Swanst. 553, it was expressly held by Sir

Thomas Plumer, master of the rolls, upon full argument, and under strong circumstances, that a female married adult legatee was not entitled to interest, until after the lapse of the year from the testator's death. His ground was, that it had never been allowed in favor of any adult legatee; and he added, "Neither reason nor authority extends the exception to adults."

But independently of this stringent decision, which has never been questioned, and is, indeed, completely sustained by Lowndes v. Lowndes, 15 Ves. 301, there is a circumstance furnished by the present will, which repels strongly any presumption, that the testatrix intended to provide for an immediate interest; and, in the absence of such presumption, would induce the court not to decree it. I allude, not to the specific legacies of household furniture, &c., given to Mrs. Sullivan, but to the life estate given to her in the real estate in Milk street. This is an immediate devise; and from the very terms of the will and marriage articles the estate may be presumed to be valuable; and in some of the answers it is stated to be quite valuable. How valuable I do not say; though I observe Mr. Bowdoin estimates it at the large sum of $40,000. But whatever might be its value, the court cannot but see, that it is a fund capable in its own nature of yielding an income; and it is in this view only, that I rely on it.

But it is argued by the counsel for the plaintiffs, that assuming the general rule to be, as it is here stated, still it is inapplicable to the present case. First, it is said, that, here, there were few or no debts due from the estate of the testatrix, and therefore it was the duty of the executors to make immediate payment of the legacy; and if so, they ought to be presumed immediately to assent to the legacy, and to appropriate the funds accordingly. But it was just as much their duty to pay all other legacies as this; and just as much their duty to take care of the interest of the residuary legatee, as of the general legatees. They had a right to time to make inquiries, to arrange the funds, and to deliberate on the point, out of what portion of the personal estate the legacies could be most conveniently paid. But the rule, as to payment of legacies, does not, as we have already seen, depend upon the posture of the particular estate, whether there are debts to be paid or not, or assets to be got in or not. Gibson v. Bott, 7 Ves. 89, 95. It stands upon a broader principle of public convenience. If there are not assets in the hands of the executors at the end of the year, still interest runs from that period. If there are assets, the law does not compel the executors to pay legacies within that period. It leaves the subject, where it can best be left, to the discretion of those, who are the chosen trustees or agents of the testator to administer his estate. The law aims not so much to do exact justice in the particular

case, as to administer a safe and steady general justice, meeting the mass of cases. In Sitwell v. Bernard, 6 Ves. 520, 539, Lord Eldon said: "Where an estate is given in various legacies, and the residue is given, it is a rule of convenience, that authorizes this court to say, (for there is no language in the will for it,) that those legacies shall be payable at the end of a year from the death of the testator; because, as a general rule, it may be taken, that the personal estate may be collected within a year; though in many instances that falls enormously to the prejudice of the residuary legatee." The truth is, that the law does not consider the legacy for the purposes of the will as due before the end of the year; and therefore the executors are not bound to pay it before it is due; but may exercise their discretion.

Then, again, it is said, that the marriage articles provide for an immediate distribution of her estate according to the will. But I can read no more in the articles than a general direction, that the estate shall be distributed according to the will upon the decease of the testatrix. This can only mean in a reasonable time; and does not supersede the general rules of legal interpretation. The case of Webster v. Hale, 8 Ves. 410, where interest was denied, had a far more pressing injunction. The law cannot deal with such niceties of expression for any practical purposes, and therefore excludes them from its view.

Then, again, a constructive or positive assent to the legacy by the executors is relied on; but that goes no further than to provide a legal remedy, and not to hasten the time when the legacy is due or payable.

Then, again, a particular class of cases is relied on, as furnishing an exception to the rule, as to interest, and allowing it from the death of the testator, where the court have endeavoured to collect the intention from the language of the will. I allude to that class of cases, under which Sitwell v. Bernard, 6 Ves. 539; Entwistle v. Markland, Id. 528; Stuart v. Bruere, Id. 529; Fearns v. Young, 9 Ves. 549; Gibson v. Bott, 7 Ves. 89; Hutchin v. Mannington, 1 Ves. Jr. 366, and Angerstein v. Martin, 1 Turn. & R. 232, fall. But that class chiefly respects cases, where a residue is given to one for life with remainder over. There are no circumstances in the present case, which bring it within the reach of the principles of those decisions, and it is therefore unnecessary to discuss them.

Upon the whole, in every view, in which I can consider this case, after the very learned and able arguments, with which I have been furnished, and which have so much aided me in arriving at a satisfactory conclusion, my judgment is, that upon this legacy Mrs. Sullivan was not entitled to any interest until a year after the death of the testatrix. The general rule established for a great length of time is against the allowance. The present case is not within any known exception to that rule. I am not bold enough to make a new one; and must content myself on this, as on many other occasions, not in doing what I might wish in the particular case, but what the law requires from one, whose duty it is merely to expound it.

But there is one circumstance in the case, which materially affects the application of the rule in the present case. It appears, that the executors did in point of fact within the year invest six thousand dollars in their own names as trustees of Mrs. Sullivan, and also, upon her written request and upon security given by her husband, did loan to him the farther sum of three thousand dollars, making in the whole an investment in fact upon her account of $9,000. Now it appears to me, that this was equivalent to the payment of so much of her legacy. It was an appropriation of so much to her exclusive account, and discharged the estate of the burthen pro tanto. In the case of such a payment within the year directly to a legatee, there can be no doubt, that the subsequent income of the sum so paid must belong to the legatee. It appears to me, that the appropriation of the sum in the hands of the trustees of Mrs. Sullivan for her use, and on her account exclusively, is not distinguishable in principle from the case of payment.

It has been already stated, that Mrs. Sullivan could not claim interest until after the year; and the executors could not be compelled to pay the legacy until that period. But it by no means follows, that, as a matter of discretion, the executors were not at liberty to pay the legacy within the year. There would be no breach of duty in so doing. They might, if they had seen fit, have invested the whole $20,000 for Mrs. Sullivan exclusively in stock within the year; and if they had, she would from the time of the investment have been entitled to the income. In Pearson v. Pearson, 1 Schoales & L. 10, 12, Lord Redesdale said: "The executor may pay the legacy within the twelve months; but he is not compelled so to do. He is not to pay interest for any time within the twelve months, although during that time he may have received interest. But if he has assets, he is to pay from the end of the twelve months, whether the assets have been productive or not." And in the recent case of Angerstein v. Martin, 1 Turn. & R. 232, 241, Lord Eldon said: "I know of no case, which prevents executors, if they choose, from paying legacies or handing over the residue within the year; and if it is clear, currente anno, that the fund for the payment of debts and legacies is sufficient, there can be no inconvenience in so doing." The same doctrine is found in elementary writers. See 2 Rop. Leg. (White's Ed.) p. 188, c. 20, § 2. But it is sufficient for my guidance, that it is founded in reason and has the authority of such extraordinary judges as Lords Eldon and Redesdale to support it.

My opinion, therefore, is, that whatever in-

terest or income accrued within the year upon the nine thousand dollars invested or lent on account of Mrs. Sullivan, she is entitled to, and it does not fall within the residuum.

The decree will be framed upon these principles; and it will then be referred to a master to settle the amount due in conformity thereto. Under all the circumstances, I shall apportion the costs equally between the plaintiffs and the defendants, and that portion, which falls on the executors, is to be paid out of the estate.