# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT

OF THE

## STATE OF WISCONSIN.

---

### WILLIAMS vs. ELY, impleaded, &c.

Where the trial of an issue of fact has been had before the court without a jury, and its decision *orally* given, and judgment thereon perfected, the judge before whom the trial took place, has power, after the expiration of twenty days from the close of the term at which the case was tried and judgment rendered, to reduce such decision to writing, stating the facts found by him and his conclusions of law, so as to comply with section 19, chapter 132, Revised Statutes, 1858, and cause the same to be filed with the clerk *as of the day* when the decision was orally made and judgment entered.

Administrators of an estate, before any commissioners have been appointed to examine and adjust claims against it, and before any order for its distribution has been made, may, at their own risk, assign to one of the heirs of the deceased a note and mortgage belonging to the estate, as an advance upon his distributive share of the estate, and the assignee may maintain an action to foreclose the mortgage, in the absence of any proof of fraud, collusion or deficiency of assets to meet the debts of the estate.

*June Term, 1860.*

*WILLIAMS v. ELY.*

APPEAL from the Circuit Court for *Rock* County.

Absalom Williams, of Walworth county, died intestate in June, 1857, owning a note given by *Ely*, secured by mortgage. In October, 1857, his administrators made a written assignment of the mortgage and mortgage debt to *Jeremiah Williams*, "in consideration that he was entitled to a part of the estate, as heir of said Absalom Williams," and this action was brought by *Jeremiah* to foreclose the mort-

VOL. XIII—1

gage. It was admitted upon the hearing, that no commissioners had ever been appointed to examine and adjust claims against the estate of Absalom Williams, and that no order or decree of distribution of said estate had ever been made, and that said Absalom left seven children, his heirs at law, who were still living. The complaint was in the usual form; the answer a general denial. The cause was heard and judgment entered for the plaintiff on the 1st of July, 1859, without any formal finding having been made out and filed by the judge. The defendant excepted to the judgment and decision on the ground that it was against law and the evidence, and because the judge did not find separately the facts and his conclusions of law thereon.

Upon the settlement of the bill of exceptions on the 20th of December, 1859, a formal finding was signed by the judge and filed by his order, as of the 1st of July, 1859, to the signing and filing of which the defendant excepted.

*E. E. Boies*, for appellant:

The finding of the court stands in the place of a verdict, and is necessary to sustain the judgment. *Sayre vs. Langton*, 7 Wis., 214; *Sisson vs. Barrett*, 2 Comst., 406; Voorhies' Code, 328; How. Code, 386. Administrators are to settle the estate according to known rules. They cannot act as guardians of minor heirs, or exercise a sort of undefined power as patrons of the family. *Washburn vs. Hale*, 10 Pick., 429; *Weeks vs. Gibbs*, 9 Mass., 74. Creditors have a lien on assets in the hands of the administrator. R. S., 1849, p. 367, sec. 6. Personal estate must be sold by administrators in pursuance of the order of the probate court. R. S., 1849, *ubi supra*, and sec. 4, p. 378. Distribution without order of the probate court is expressly prohibited. R. S., 1849, pp. 380–1, secs. 1–4, 13. A person colluding with the administrator is liable to the creditors of the estate. 1 Story Eq. Jur. § § 422, 423, 579–581. The assignment shows on its face that the plaintiff was not a purchaser, and that it was given to him only by way of patronage, and *Ely* paying him would do so with full notice, and would be liable to the creditors of the estate in case of a deficiency, and to the other heirs in case of an

inequitable distribution. Dayton's Surr., 281–2 ; 2 Will. on Ex'rs, 799, 800; *Beecher vs. Buckingham*, 18 Conn., 123.

June Term, 1860.

WILLIAMS
v.
ELY.

*Wyman Spooner*, for respondent:

An administrator has an absolute power to dipose of the personal effects of his intestate, except in cases of collusion between the purchaser and the administrator (1 Will. on Ex'rs, 663, 670–2; Dayton's Surr., 280), and may make payment or deliver specific property on account of a distributive share of the estate previous to a settlement of his administration account, and without an order of the court; but he does so at his peril, and will be personally liable to creditors and others, if the assets prove insufficient to pay the debts and other distributive shares. Dayton's Surr., 413–14, 443–4; Will. on Ex'rs, 958–967, and 995, note (y); *Overfield vs. Bullitt*, 1 Mo., 749; *Beecher vs. Buckingham*, 18 Conn., 110; 17 Mass., 380. The defendant, moreover, does not stand in the position of a purchaser, and has no right to inquire into the consideration of the assignment.

*By the Court*, DIXON, C. J. One of the questions involved in this appeal is whether, in a case where the trial of an issue of fact has been had before the court without a jury, and its decision orally given and judgment thereon perfected, the court before which such trial took place has the power, after the expiration of twenty days from the term at which the case was tried and judgment rendered, to reduce such decision to writing, stating therein the facts found by him and his conclusions of law, so as to comply with sec. 19 of chap. 132, R. S., and to cause the same to be filed with the clerk as of the day when the decision was orally made and the judgment entered. The decision was pronounced and judgment entered July 1, 1859. It was reduced to writing and directed to be filed, *nunc pro tunc*, the 20th day of the subsequent December.

November 19.

A provision corresponding in all respects with section 19, except that it does not require the judge to make a statement of the facts found and his conclusions of law separately, contained in the Code of New York, has been the subject of many doubts and some conflicting opinions among the courts

of that state. But the prevailing and better opinion seems to have been, that the courts have such power, and that a written decision may be made and filed after the expiration of the time within which the statute prescribes that it shall be done. It is obvious that the determination of the question turns upon whether the section is to be regarded as directory merely, or as involving a positive duty. If the former, then the omission may, in furtherance of justice and for the sake of upholding the substantial rights of the party in whose favor the judgment was rendered, well be supplied at a future day. But if the latter construction is to be given, then the making and filing of a decision in writing within twenty days after the term of court at which the trial took place, becomes indispensable; and if not done within that time, the court loses all jurisdiction of the case for the purpose of rendering a judgment therein, or aiding any judgment which may have been entered, and a retrial must be had.

I must say that, independently of any decisions on the subject, it appears to me clearly that the statute is only directory, and that the legislature did not intend that if, through inadvertence, sickness, necessary absence, or the pressure of busines, or other cause, the judge did not file his decision within twenty days, the cause must in all cases be retried. Such a practice, while conferring no substantial benefit, would be most intolerably burdensome to the profession and expensive to suitors. But I think the question has already been virtually settled by this court. Beginning with the case of *Sayre vs. Langton*, 7 Wis., 214, and coming down to the case of *Keep vs. Sanderson*, decided at the present term, I think the decisions show that the section has always been regarded as directory. In *Sayre vs. Langton* there was no formal decision in writing whatever. The report of the clerk to whom it was referred to compute and ascertain the amount due upon the note and mortgage, together with the recital of facts contained in the judgment, were held to be sufficient, in the absence of a specific objection and exception for the want of a written decision, to sustain the proceeding. In *Keep vs. Sanderson* it was decided that the circuit judge might amend his decision in the particulars to which objections

were taken, at or after the time of the filing of the exceptions. The amended finding in that case was made and filed on the 20th day after the trial and after the first finding was made and filed and exceptions taken thereto. In *Sheldon vs. Rockwell*, 9 Wis., 166, the objection on appeal that no finding in writing was made and filed by the judge, was over-ruled because it appeared that no exception for that reason was taken in the court below. In *Ogden vs. Glidden*, 9 Wis., 46, the judgment of the circuit court was reversed for the want of a decision in writing, the appellants having excepted to the judgment on that account, and no amendment having been made. In *Catlin vs. Henton*, id., 476, a decision, general in its form, and which only found the facts to be as alleged in the complaint, was held to be a sufficient compliance with the statute in an equity case. These adjudications, particularly *Sayre vs. Langton* and *Sheldon vs. Rockwell*, conclusively show that the provision has been considered directory merely; for if the decision in writing be indispensable, then it is impossible to say that a judgment could be permitted to stand without it, even though it was not excepted to for that reason. They therefore show that a non-compliance with the statute does not affect the jurisdiction of the court to pronounce or perfect its judgment after a trial has been had, and that the omission may be supplied or a defective finding corrected, at any time before a bill of exceptions is settled and signed by the judge. Such was the course pursued in this case, and I can see no objection to it. The power to do so is clearly conferred by sec. 38 of chap. 125, R. S., which provides that the court may, in its discretion and upon such terms as may be just, supply an omission in any proceedings.

The other question calls for a determination of the power of administrators in the sale and disposition of the personal property of their intestates. The facts are briefly these. The note and mortgage for the foreclosure of which this action was instituted, were executed to one Alfred Haskins, who assigned them to one Absalom Williams in February, 1855. Williams remained the owner of them until his death, which happened in Walworth county, in June, 1857. On the 14th

day of August following, administration of his estate was duly granted in the usual form, by the probate court of that county, to Fanny Williams, Stephen Williams and Absalom Williams, who, in the month of October of that year, by an instrument properly executed by them for that purpose, assigned and transferred the note and mortgage to the plaintiff. It was admitted at the trial that no commissioners had been appointed to examine and adjust the claims and demands against the estate of Absalom Williams, deceased; that no order or decree for the distribution of the estate had been made; and that the deceased left as his heirs at law, seven children who were still living. Upon this state of facts it was insisted by the defendant, that the administrators had no power to convey or dispose of the note and mortgage, and that consequently the plaintiff had no title to them and could not maintain the action. The objection was overruled and judgment given for the plaintiff, from which the defendant appealed.

No general rule of law and equity is better settled than that an executor or administrator has an absolute power of disposal over the whole personal estate of his testator or intestate; and that it cannot be followed by creditors, much less by legatees, either general or specific, into the hands of the *bona fide* alienee. The reason of the rule is said to be, that the executor or administrator, in many instances, *must* sell in order to perform his duty in paying debts, &c.; and that no one would deal with an executor or administrator if liable afterwards to be called to account. Williams on Executors, 796. The only exceptions to this general power are to be found in those cases where the purchasers or third persons deal with the executor or administrator fraudulently and collusively and for the purpose of aiding him in the accomplishment of some known unlawful object. Purchases from executors or administrators are in general binding and valid, notwithstanding the personal property purchased may be subject to trusts or equities in their hands. The sale is *prima facie* consistent with their duties, and the purchaser is not presumed to know that it is not required in the regular course of the administration or distribution of the assets. Hence

the sale is always presumed to be valid and legal until it is shown that the purchaser has acquired the property by a known breach of trust or *devastavit* by the executor or administrator, and then, as in all other like transactions, the transfer will be impeached and set aside by reason of the fraud.

This general power of sale and disposition flows from the nature of the interest which executors and administrators are said to have in the personal property of their testators and intestates. In *quality* their interest is not the absolute, proper and general interest which every person has in his own goods, for they are seized in right of another merely, and as ministers or dispensers of the goods of the dead. But in *quantity* their interest is co-extensive with that of the persons whom they represent. As an incident to such ownership, they have, subject to the limitations above stated, the same absolute power of disposal and control. Williams on Ex'rs, 532, 546 and 790.

Such are the general principles governing this subject as they are understood to exist both at law and in equity, in England and throughout this country; and unless they are changed or modified by the operation of our statutes as was contended by the counsel for the appellants, they seem to be decisive of this case. No fraud or collusion between the administrators and the plaintiff in the sale or transfer of the note and mortgage is alleged or proved. It must therefore be presumed to be fair and legal, providing the general power of the administrators is not cut off or limited by the statutes. And I do not think that it is, or was intended so to be. Our statutes regulating the administration of the estates, the sale of the property, the payment of the debts and distribution of the assets of deceased persons, are the same substantially as those which prevail in most of the states. There is no provision which, it is claimed, directly abrogates the general authority of the personal representatives of deceased persons as it has heretofore been understood to exist; and none of those relied upon are, in my opinion, inconsistent with it. Every executor and administrator, before letters testamentary or of administration shall

issue, and before he shall enter upon the execution of his trust, is required to give bond to the judge of probate in such reasonable sum as he shall direct, with one or more sufficient sureties, conditioned that he will make and return within three months, a true and perfect inventory of all the goods, chattels, rights, credits and estate of the deceased, which shall come to his possession or knowledge or to the possession of any other person for him; that he will administer according to law the goods, chattels, rights, credits and estate of the deceased, which shall come to his possession, or to the possession of any other person for him, and out of the same pay and discharge all debts, legacies and charges, chargeable on the same, or such dividends thereon as shall be ordered and decreed by the probate court; that he will render a true and just account of his administration to the court within one year, or at any other time when directed by the court; and that he will perform all orders and decrees of the court, by him to be performed in the premises. The estate and effects comprised in the inventory which he is required to return, must be appraised by two or more disinterested persons, who are appointed by the judge of probate for that purpose, and who are sworn to a faithful discharge of their trust. Such appraisement is returned to the court with the inventory, and with the exception of such articles of household furniture and other personal property as are allowed to the widow, and which are separately inventoried and appraised, the property and effects described in such inventory and appraisement are considered as assets in the hands of the executor or administrator, and chargeable to him in his account. The effect of these provisions, no doubt, is to make the inventory and appraisement evidence against him of the amount and value of the property contained therein; and unless by inevitable accident or otherwise, without default or negligence on his part, some portion of the articles inventoried should be lost or destroyed, or upon a sale fairly conducted, either at public auction or at private sale, pursuant to an order of the court made on application for that purpose, the real value or proceeds should be found to be less than the appraisement, he

would undoubtedly be held accountable for the full value as fixed by the appraisers. If he wishes to save himself from any loss or damage in consequence of a depreciation in the price or value of the goods, or of an excessive valuation by the appraisers, the statute provides that he may apply to the court for an order, and that when he sells under such order he shall account for the same at the price for which they shall be sold. This provision was clearly introduced for his protection if he saw fit to avail himself of it, but it was not intended as the exclusive mode in which the effects of deceased persons might be disposed of. .He may, nevertheless, sell at public or private sale without such order, always holding himself responsible for the value as established by the appraisement. And in such case, as in a sale made pursuant to an order, he will be accountable for the entire proceeds where they exceed the appraised value. In the case of debts due to the deceased, it is provided that he shall not be accountable if it shall appear that they remain uncollected without his fault. But if he sell them without an order for that purpose, he must, of course, account for them at the sum which they called for.

In the provisions made by the legislature, to some of which I have referred, it seems to me plain that they recognize and contemplate the continuance of the general author ity of the executor or administrator to sell the property of the deceased at his pleasure, and that they only intend to guard against and prevent an abuse of that authority by providing that he shall give ample security for the faithful performance of it, and to supply suitable means by which he may escape losses, which must otherwise frequently fall upon him without his default or neglect.

Such being the general powers of the executor or administrator, he may, if he choose, but at his own risk, make an advance to the heir, or distributee, before a decree for that purpose. His knowledge of the condition of the estate may frequently enable him to do so without any real danger to himself; but if such advance be not afterwards covered by the decree, he and his sureties are responsible. If, therefore, the transfer of the note and mortgage in this case was made

June Term,
1860.

to the plaintiff as an advance upon his distributive share as heir at law of the deceased, it does not, in the absence of any evidence of fraud, collusion or deficiency of assets with which to meet the debts due from the estate, constitute any valid objection to a recovery.

The section which declares that the personal estate that shall come to the hands of the executor or administrator, shall be first chargeable with the payment of the debts and expenses, is clearly designed as a regulation of the order in which the assets shall be disposed of for those purposes, and not as a change or modification of the common law rule, nor to give the creditors a lien on the assets in his hands. By the common law the executor or administrator is for many purposes regarded as the owner of the assets, having the power to alien and dispose of them, but no such thing is known as the assets in his hands being the debtor, or the creditor's having a lien on them. The person of the executor or administrator, in respect to the assets in his hands, is treated as the debtor. 1 Story's Eq. Jur., sec. 579. The same observations may be made of those provisions which concern the partition and distribution of estates. They are intended as general regulations of those subjects, and not as restrictions upon the common law powers of executors and administrators.

In my opinion the judgment of the circuit court should be affirmed. Judgment affirmed.