CLINTON C. PALMER, Appellant from Decree of Judge of Probate,

*vs.*

ESTATE OF ELIZABETH C. PALMER.

York.    Opinion September 15, 1909.

*Wills.   Construction.   Legacies.   Specific Legacies.   General Legacies.   Payment of Legacies.   Dividends or Interest Accruing after Death of Testator.*

1.   A testatrix made a bequest in the following language: —

"Whereas my sons Bartlett and Clinton have at sundry times received from me sums of money not herein accredited, as an equivalent, I give and bequeath to my two children Chase and Lillian twenty shares of Pepperell Manufacturing stock and twelve shares of Penn Steel Pref'd stock or the value of five thousand dollars each, should a change be made in these investments."

*Held:*   That under this bequest, the legatees, Chase and Lillian, are each entitled to twenty shares of the Pepperell stock and twelve shares of the Steel Preferred stock.

2.   A bequest of a stated number of shares of stock of a designated corporation, without any reference to the particular shares intended to be bequeathed, is not specific, but general.

3.   Whether a bequest of a stated number of shares of designated stock, without other words of identification, and without words indicative of present ownership or possession, is made specific by the circumstance that the testator had at the time of making his will that precise number of shares, quaere.

4.  Specific legacies carry with them all accessions by way of dividend or interest that may accrue after the death of the testator, unless the will specifies otherwise.

5.  An executor is not compellable to pay general legacies within one year after the death of the testator.  But he may lawfully pay and discharge them within the year, if the estate be such as to enable him to do so.

6.  Dividends on stocks bequeathed as general legacies, paid within a year after the death of the testator, and after they have been transferred to the legatees, belong to the legatees, and not to the estate.

7.  When shares of stock bequeathed as a general legacy were transferred to the legatees on the books of the company prior to January 20, 1908, but were not formally delivered to them until February 1, of the same year, the legatees were entitled to a dividend declared to stockholders of record on the books of the company on January 20, 1908, payable February 1.

On report.    Appeal from decree of Judge of Probate.    Appeal sustained.

Appeal from the decree of the Judge of Probate, York County, allowing the account of the executors of the last will and testament of Elizabeth C. Palmer.    When the matter came on for hearing in the Supreme Judicial Court sitting as the Supreme Court of Probate, an agreed statement of facts was filed and the case was then reported to the Law Court "for such judgment, direction and decree as the law and admissible evidence require."

The case is stated in the opinion.

*Clinton C. Palmer*, *Geo. F. and Leroy Haley*, for plaintiff.

*James O. Bradbury*, for defendant.

SITTING :    WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

SAVAGE, J.    This is an appeal from the decree of the Judge of Probate, allowing the account of the executors of the will of Elizabeth C. Palmer, and involves the construction of that will. The will is holographic.    And the particular paragraph which requires consideration is as follows :—

"Third.·  Whereas my sons Bartlett and Clinton have at sundry times received from me sums of money not herein accredited, as an equivalent, I give and bequeath to my two children Chase and Lillian twenty shares of Pepperell Manufacturing stock, and twelve

shares of Penn Steel Prefd stock or the value of five thousand dollars each, should a change be made in these investments.

To my son Francis I give and bequeath my Kennebunkport property, house, land and furnishings, valued at five thousand dollars.

In addition to the foregoing I give to my daughter Lillian five shares of Amoskeag Manufacturing stock, five shares of Bates Manufacturing stock, twenty shares of Union Pacific R. R. Prefd stock, eight shares of New Jersey R. R. & Canal stock and one Maine Central five hundred dollar bond."

Mrs. Palmer died September 30, 1907, and her will was allowed November 5, 1907. Her sons Chase Palmer and Francis Palmer, and a nephew, Chase Eastman, the executors named in the will, were appointed executors, and qualified as such.

Within a year from the death of the testatrix, the executors, in satisfaction of the legacies in the paragraph above mentioned, delivered to Chase Palmer and Lillian C. Palmer, each, twenty shares of Pepperell stock, and to each twelve shares of Penn. Steel preferred stock, and to Lillian C. Palmer the number of shares of Amoskeag, Bates, and other stocks which were bequeathed to her. During that year dividends were declared and paid on some of those stocks, and the legatees received the dividends paid after the stock had been transferred to them.

The executors in their account credited themselves with the stock thus transferred, and did not charge themselves with dividends paid on these stocks during the year, after the transfers. Their accounts thus stated were allowed by the Judge of Probate.

It is admitted that the executors should have charged themselves with a dividend of $6 a share paid on six shares of Pepperell stock set apart for the benefit of Clinton C. Palmer under the residuary clause of the will, but not then delivered to his trustee, and that in this respect the decree of the Judge of Probate was erroneous.

From the allowance of the account, Clinton C. Palmer, a residuary legatee, appealed, and under the reasons of appeal, upon the facts as stated, two controverted questions arise. First, was the bequest to Chase Palmer and Lillian C. Palmer, in paragraph three of the

will, of twenty shares of Pepperell stock, and twelve shares of Penn. Steel preferred stock, a bequest to them as tenants in common, that is, of twenty shares of the one, and twelve shares of the other, for both, or was it a several bequest, as the Judge of Probate decided, of twenty shares of the one, and twelve shares of the other, to each? Secondly, was the estate entitled to all dividends on stocks bequeathed, which accrued within one year from the death of the testatrix, and should the executors have been charged for the same in their account?

I.    The cardinal rule for the interpretation of wills is that they shall be construed so as to give effect to the intention of the testator. The intention, however, must be gathered from the language which the testator used.  It may be sought, as the saying is, within the four corners of the will.  If the language of the will is of doubtful meaning, it may be interpreted in the light of conditions existing at the time the will was made, and which may be supposed to have been in the mind of the testator.  But the language used must be interpreted in accordance with the settled canons of interpretation, even if it may result in a seeming overthrow of the testator's intent. These rules are so well settled that the citation of authorities in support of them is unnecessary.

The will of Mrs. Palmer presents questions of some difficulty and doubt.  Whether she intended to give her children, Chase and Lillian, together, twenty and twelve shares respectively of the stocks named, or to each separately, twenty and twelve shares, is, we think, from any point of view, uncertain.  No light is thrown upon the intention of the testatrix in the third paragraph of the will, by any other portion, and the case is almost barren of evidence of any existing conditions which might have helped interpretation.  We are compelled to fall back upon the bare language of the paragraph itself.

Had the testatrix said only, "I give and bequeath to my two children Chase and Lillian twenty shares of Pepperell Manufacturing stock and twelve shares of Penn. Steel Prefd. stock," this would have been a bequest to them in common.  Together they would have taken the twenty shares and twelve shares.  On the contrary, if she

had added to the foregoing the following eight words "or the value of five thousand dollars each," and stopped there, the whole clause would properly be interpreted as a gift to each of them of the stock described, or an alternative gift in cash to each. But she did not stop there. She added the words, "should a change be made in these investments." These words undoubtedly apply to and limit the alternative cash bequest. The legatees are to have money in lieu of stocks, in the contingency that a change is made by the testatrix in the investment, not otherwise.

The precise question is, does the word "each" apply only to the cash bequest, or does it apply to the alternative? It would have been somewhat clearer, we think, that the former was intended, had Mrs. Palmer rearranged the clauses and put the words she used into this form "or, should a change be made in these investments, the value (doubtless meaning "amount") of five thousand dollars each." But this was not the way she expressed herself. She placed the word "each" at the end of a bequest, first of stocks, or, secondly, in case of a specified contingency, of money.

The appellant contends that she meant to give the stocks to the legatees in common, but the money, in case the contingency happened, in severalty. But from the words used, and the order in which they are used, we are unable to discover such a meaning. If a testator intended that two legacies, granted to the same persons, in the same sentence, the one legacy contingent and alternative to the other, should fall to the legatees in different proportions, or in a different manner, in one legacy than in the other, we should expect a change of expression to indicate it, other than appears in this will. We should expect the antithesis to be more apparent. It may be, in this case, that the testatrix intended these shares of stock to go to these legatees in common. But, if so, we think she failed to express her meaning with sufficient clearness. So that, although the construction to be given to this bequest is not free from doubt, we find ourselves inclined to the conclusion, based upon the language alone, that the testatrix intended that Chase and Lillian should each have twenty and twelve shares of the respective stocks. This was the conclusion of the Judge of Probate. And we so decide. And this

conclusion is not affected by any light thrown on the will by conditions existing when it was made.

It has been argued that the value of twenty shares of one stock and twelve of the other at the date of the will was in the neighborhood of $10,000, and therefore that the testatrix intended the money bequest to be an equivalent in value of the stock, whereas it would be only about one-half the value of forty shares of one stock and twenty-four of the other. But the case before us does not show the value of the stocks at the time the will was made. It does show their appraised value months afterwards. We cannot take judicial notice of the rise or fall of particular stocks. So that the argument has no basis of proof upon which we can rest.

II. The second question is whether the dividends on the stocks bequeathed, paid during the year after the death of the testatrix, and after they were transferred, belonged to the estate, or to the legatees. And this depends upon the answer to the question whether the executors might lawfully turn over the stocks as a satisfaction of the legacies, before the year was ended.

The appellant contends that it was the duty of the executors to keep the stocks for a year after the death of the testatrix, and having failed to do so, that they are chargeable for the dividends which they might have received, but did not. It is not claimed that this rule would be true concerning specific legacies. A specific legacy is a bequest of a specific thing or fund that can be separated out of all the rest of the testator's estate of the same kind, so as to individualize it, and enable it to be delivered to the legatee as the particular thing or fund bequeathed. *Stilphen, Applt.*, 100 Maine, 146. Specific legacies carry with them all accessions by way of dividend or interest that may accrue after the death of the testator, unless the will specifies otherwise. 2 Redf. on Wills, sect. 468; *Sullivan v. Winthrop*, 1 Sumn. 1; Fed. Cas. 13,600. And while an executor may withhold payment of a specific legacy for a time, since it is subject to the payment of debts, it is unquestionably true, if the condition of the estate warrants it, he may at his discretion, and also at his own risk, pay it at any time. *Bonham v. Bonham*, 33 N. J. Eq. 476; *Alexander v. Stewart*, 8 Gill & J. 226.

But the appellant contends that the legacies of stock to Chase and Lillian, which we have already discussed, as well as the legacies of stock to Lillian alone, in the last clause of the third paragraph of the will, are not specific legacies, but that they fall into the class known as general or pecuniary legacies.   Such legacies are payable out of the general assets of the estate.   *Stilphen*, *Applt.*, supra. And in the case of the legacy of stocks, they may be satisfied by the delivery to the legatees of any stock whatsoever answering the description.

We will consider first the shares of Pepperell stock and Steel Preferred stock bequeathed to Chase and Lillian.   It nowhere appears in the case, except in the reasons of appeal, which are not evidence, that these shares are only portions of the stock in these companies which the testatrix owned when the will was made.   But counsel on both sides in their arguments have assumed such to be the fact.   Hence we assume it.

We regard it as a well settled canon of interpretation that a bequest of a stated number of shares of stock of a designated corporation, without any reference to the particular shares intended to be bequeathed, is not specific, but general, *Johnson* v. *Goss*, 128 Mass. 433.   See also 10 Am. & Eng. Annotated Cases, 492, and cases cited.   The bequests to Chase and Lillian of the Pepperell stock and Steel Preferred stock come within this rule, and must be regarded as general legacies.

As to the bequest to Lillian of Bates, Amoskeag, and New Jersey R. R. & Canal Co. stocks, the case states that the numbers of the shares of these stocks designated were the same as were listed in the inventory.   The appellant points out that this does not necessarily mean that the numbers were the same as the testatrix owned at the time the will was made,—in other words that she then might have owned more than she did at the time of her death. But for the purposes of this discussion, we assume that the shares bequeathed to Lillian equalled the exact number which she then owned.   In such a case, the weight of authority apparently is to the effect that a bequest of a stated number of shares of designated stock, without other words of identification, and without words

indicative of present ownership or possession, is not made specific by the circumstance that the testator had at the time of making his will, that precise number of shares.    See 10 Am. & Eng. Annotated Cases, p. 492, and cases cited.    There are, however, persuasive arguments to the contrary, found in *White* v. *Winchester*, 6 Pick. 47 ; *Martin, Pet'r,* 25 R. I. 1, and other cases.

But in view of the conclusion we have reached on the main matter in controversy, we do not deem it necessary to examine the character of these legacies further.    We shall assume, as the appellant claims, that all these legacies are general.    The question then arises whether the executors could properly pay them within one year after the death of Mrs. Palmer.    We think they could.

In the absence of a statutory provision, or of any direction otherwise in the will, general or pecuniary legacies are generally payable in one year after the death of the testator, and bear interest after that time.    2 Redfield on Wills, sect. 471 ; *Dawes* v. *Swan,* 4 Mass. 208 ; *Hamilton* v. *McQuillan,* 82 Maine, 204.    This rule, said Judge Story, in *Sullivan* v. *Winthrop,* 1 Sumner 1 ; Fed. Cases, No. 13,600, is "irrevocably fixed as a general rule" and is based on the "broad principle of public convenience."    In this State there is no statute on the subject.    And no time of payment has been specified in this will.    The expression that such legacies are *payable* in one year after the death of the testator means that an executor is not compellable to pay within the year.    It does not mean that he may not pay within that time.    In 2 Williams Executors, 855, it is said that the allowance of one year to executors, during which they may retain the entire personal estate, "is merely for convenience, in order that the debts of the testator may be ascertained, and the executor made acquainted with the amount of assets, so as to be able to make a proper distribution.    Therefore, if the state of the testator's circumstances be such as to enable the executors to discharge legacies at an earlier period, they have authority to do so."    *Garthshore* v. *Chalie,* 10 Ves. Jr. 13.    In 2 Woerner on Administration, sect. 454, it is said that "since the creditors of a testator must all be satisfied before any legacy is payable, the executor must be allowed a reasonable time to inform him-

self of the state of the property and the demands upon the same, before the legatees can compel him to satisfy their legacies.     The period fixed by the civil law, and acquiesced in by common law courts, is a year from the testator's death, within which the executor cannot be compelled to pay a legacy, although directed by the testator to pay sooner.     But the time is given simply for the convenience and protection of the executor; hence he may discharge the legacies at an earlier period if the estate be such as to enable him to do so." In *Sullivan* v. *Winthrop*, supra, Judge Story said:     "It has been already stated that Mrs. Sullivan could not claim interest until after the year, and the executors could not be compelled to pay the legacy until that period.     But it by no means follows that as a matter of discretion, the executors were not at liberty to pay the legacy within the year.     There would be no breach of duty in so doing.     They might, if they had seen fit, have invested the whole $20,000 for Mrs. Sullivan exclusively in stock within the year; and if they had, she would from the time of the investment have been entitled to the income."     After citing *Pearson* v. *Pearson*, 1 Sch. & L. 10, in which Lord Redesdale said:     "The executor may pay the legacy within the twelve months, but he is not compelled to do so," and *Angerstein* v. *Martin*, 1 Turn. & Russ. 232, in which Lord Eldon said:     "I know of no case which prevents executors, if they choose, from paying legacies or handing over the residue within the year, and if it is clear, currente anno, that the fund for the payment of debts and legacies is sufficient, there can be no inconvenience in so doing," Judge Story added, "It is sufficient for my guidance that it is founded in reason, and has the authority of such extraordinary judges as Lords Eldon and Redesdale to support it."     *Evans* v. *Inglehart*, 6 Gill & J. (Md.) 171; *Biays* v. *Roberts*, 68 Md. 510; *Turnage* v. *Turnage*, 7 Ind. 127; *Watts* v. *Watts*, 2 McCord, 77; *Williams* v. *Ely*, 13 Wis. 1; *Hitchcock* v. *Merrick*, 15 Wis. 578; *Curts* v. *Brooks*, 71 Ill. 125; 2 Roper on Legacies, 188; 11 Am. & Eng. Ency. of Law, 1167; 18 Am. & Eng. Ency. of Law, 792.

The probate judge was right in holding, in this case, that the executors might properly pay the legacies of stocks to Chase and

Lillian within the year, and that the dividends in the stocks made payable after the transfer of the stocks belonged to the legatees.

It appears that the Pepperell stock was transferred to the legatees on the books of the company prior to January 20, 1908, but was not formally delivered to them until February 1, 1908. It also appears that prior to January 20, 1908, the Pepperell Company had declared a dividend to stockholders of record on January 20, payable February 1. The legatees received this dividend. They were entitled to it. The fact that the dividend was declared prior to their ownership of the stock is not the test. They were stockholders of record on January 20, and they were actually in possession of the stock on February 1, when the dividend was made payable. The transfer of the stock carried with it the right to the dividend payable that day.

But for the admitted error in not charging the executors with a Pepperell dividend of $36 paid August 1, 1908, on other Pepperell stock, the appeal must be sustained. The case will be remanded to the Supreme Court of Probate for decree in accordance with the opinion.

*Appeal sustained. Case remanded for decree in accordance with opinion.*