SAMUEL NASH, in equity, *vs.* GERTRUDE SIMPSON.

Penobscot.    Opinion February 6, 1886.

*Will.  Devise.  Equity practice..  Partition.  Bankruptcy.*

A testator devised to his wife as follows : "All my real estate, together with any and all right, title and interest which I have in and to any and all real estate, or any and all which I may hereafter acquire, to remain hers so long as she shall remain unmarried after my decease.  But if she shall marry again, then from that time she shall be entitled to, and receive only one-third part of all that remains.  It is my desire and will that said real estate shall remain as it is for twenty years, giving all the income thereof to my said wife, but authorizing her, in case of necessity, to sell any part thereof for her support and maintenance during her widowhood " — with no devise over. The widow died without having married again.  *Held :*

1.   That the widow, by clear and apt words of the will, took a life-estate only.

2.   That the contingent authority to sell for her support during widowhood, did not enlarge her estate to a fee, conferring only a power and not property.

3.   That the expressed desire of the testator that the real estate "should remain for twenty years, " etc., could not affect the alienation of the life-estate nor of the undevised reversion.

Between tenants in common, partition is in equity a matter of right and not of discretion, whenever either of them will not hold or use the property in common. Courts of equity, concurrently with courts of law, have jurisdiction of partition of land among tenants in common; and equity jurisdiction was expressly conferred by R. S., (1857) c. 77, § 5, cl. 6, which provision has been incorporated in the subsequent revision.

To entitle a complainant to a decree for partition, he must show a clear, legal title in himself; and when his title is disputed and not established, the bill may be retained to give him a reasonable opportunity to establish it at law.

When the complainant claims title under a will and files his bill under the statute for a construction of the will, and for an accounting and partition, the court, in the absence of any defect in his title, having thus acquired jurisdiction for the purpose of construing the will, has authority to do complete justice between the parties by compelling an account and partition.

Circumstances stated in the opinion which will warrant holding the bill to allow the complainant opportunity to establish his legal title. The defendant may dispute the complainant's legal title which the latter has conveyed away, though the former does not claim under it.

*It seems* that the assignee of a bankrupt is not bound to take possession of all property conveyed by the bankrupt in fraud of the bankrupt law.

He may elect to take it or not to take it. If he does not elect to take it within a reasonable time, it is deemed an election to reject it.

BILL IN EQUITY to obtain a construction of the will of Simeon H. Nash, and for an account and partition.

Heard on bill, answer and proof. It appears from the report of the case that Simeon H. Nash died June 24, 1866, and his will contained the devise recited in the head note ; that the widow of the testator, Eliza B. Nash, died July 19, 1884 ; that the complainant was the husband of the daughter of the testator, Abbie W. Nash, and she died.November 2, 1874, leaving a will in which she devised her estate to her husband, the complainant ; that the complainant conveyed to Francis V. Bulfinch, February 11, 1875, and filed his petition in bankruptcy September 13, 1875, an assignee was chosen, an assignment was made and recorded, and a discharge was granted September 28, 1879; that Francis V. Bulfinch conveyed to James H. Nash, July 18, 1875 ; and that Jasper H. and Daniel B. Nash conveyed to the complainant July 12, 1883. The bill was dated October 1, 1884.

*Davis and Bailey*, for the plaintiff, cited: Co. Litt. 42 ; *Mansfield* v. *Mansfield*, 75 Maine, 509 ; *Densin* v. *Mitchell*, 28 Ala. 360; *Stevens* v. *Winship*, 1 Pick. 318; *Larned* v.

*Bridge,* 17 Pick. 339; *Warren* v. *Webb,* 68 Maine, 137; *Scott* v. *Perkins,* 28 Maine, 35; *Eaton* v. *Straw,* 18 N. H. 331; *Burleigh* v. *Clough,* 52 N. H. 272; *Goodell* v. *Bigbee,* 1 B. & P. 179; *Hoyt* v. *Jaques,* 129 Mass. 286; *Paine* v. *Barnes,* 100 Mass. 471; *Shaw* v. *Hussey,* 41 Maine, 495; *Hall* v. *Preble,* 68 Maine, 101; *Ramsdell* v. *Ramsdell,* 21 Maine, 288; *Stuart* v. *Walker,* 72 Maine, 146; *Whitcomb* v. *Taylor,* 122 Mass. 248; *Smith* v. *Smith,* 10 Paige, 470; *Hanson* v. *Willard,* 12 Maine, 146; *Nickerson* v. *Bowley,* 8 Met. 432; *Turner* v. *Hallowell Savings Inst.* 76 Maine, 530; *Rosher* v. *Rosher,* 26 Ch. Div. 801; *Wilkin* v. *Wilkin,* 1 Johns. Ch. 117; *Phelps* v. *Green,* 3 Johns. Ch. 305; *Hosford* v. *Mervin,* 5 Barb. 51; *Gay* v. *Parpart,* 106 U. S. 689; *Wisley* v. *Findlay,* 3 Rand. 398; *Burleson* v. *Burleson,* 28 Texas, 383; *Miller* v. *Warmington,* 1 Jac. & Walk. 473; *Walley* v. *Dawson,* 2 Sch. & Lef. 367; *German* v. *Machin,* 6 Paige, 288; *Baring* v. *Nash,* 1 Ves. & B. 556; *Larkin* v. *Mann,* 2 Paige, 28; *Wilkinson* v. *Parish, Id.* 653.

*F. H. Appleton* (*A. L. Simpson* with him), for the defendant, contended that by the will of Simeon H. Nash, the real estate passed to the testator's widow, Eliza B. Nash, in fee, upon a condition subsequent which was never broken, and the defendant being the sole heir of Eliza B. Nash — the daughter of Simeon H. Nash, Abbie W. Nash, having died without issue before her mother — the whole estate descended to her.

The law favors the larger estate. *Fay* v. *Fay,* 1 Cush. 102. The devise of land conveys all the estate of the devisor therein unless it appears, (*i. e.* made clear) by his will that he intended to convey a less estate. R. S., c. 74, § 16. The testator intended to devise his whole estate to his wife. The words " all my real estate " are sufficient to create a fee. *Bacon* v. *Woodward,* 12 Gray, 379 and cases cited.

The plaintiff relies upon the words " so long as she shall be, or remain unmarried after my decease " claiming they are words of limitation, restricting the estate devised to one for widowhood, or at best for life, and cites authorities to sustain this

construction. But it will be found after a careful examination of these cases, that not only in all of them was there an express devise over, while in the case at bar there is none, but also, that there is a wide difference between them, in the forms of expression employed. In the case at bar the words used are not words limiting the tenure of the estate, but words of defeasance, defeating the estate, should the condition be broken. "I give and devise . . . all of my real estate, together with any and all right, title and interest which I have in and to any and all real estate, or any and all which I may hereafter acquire." If the will stopped there it would be an absolute devise. "To remain hers so long as she shall be or remain unmarried after my decease." "To remain hers" how? "To remain hers" as devised, as I have given it, in fee. There was no limitation but a condition. 4 Kent Com. (12th ed.) 127; *Otis* v. *Prince*, 10 Gray, 581; *Parsons* v. *Winslow*, 6 Mass. 169; 2 Bac. Ab. 291.

This interpretation is confirmed by a further examination of what immediately follows in the will. "But if she shall marry again then, from that time, she should be entitled to receive only one-third part of all that then remains." Now what did the testator intend by this clause, for his intention is the pole-star by which the court must be guided and which must never be lost sight of? He intends to say and does say in substance that if his wife remarries after his decease, she shall have but one-third part of what she would receive if she remained a widow — and yet if the first clause of the devise is construed as a life-estate, by the second clause she would get more — a fee of one-third — if she marries, and this result would not appear to be in consonance with the clearly indicated intention of the testator. 81 N. Y. 356; *Chinn* v. *Respass*, 1 T. B. Monroe, 25; *McLellan* v. *Turner*, 15 Maine, 436.

The construction contended for by the plaintiff leads to confusion and inconsistency, while that claimed by the defendant makes the clauses of the devise harmonious and consistent with themselves and the declared intent of the testator.

No presumption of an intent to die intestate as to any part of

the estate is to be presumed if the testator's words will carry the whole. *Stehman* v. *Stehman*, 1 Watts, (Pa.) 466; *Hunt* v. *Hunt*, 11 Met. 88.

Counsel further contended that if the complainant had any interest in the estate in reversion it passed to his assignee in bankruptcy, citing: *Belcher* v. *Burnett*, 126 Mass. 230; *Nash* v. *Nash*, 12 Allen, 345; *Dunn* v. *Sargent*, 101 Mass. 336; *Caswell* v. *Caswell*, 28 Maine, 232; *Fletcher* v. *Holmes*, 40 Maine, 364.

VIRGIN, J. Simeon H. Nash died testate leaving a widow and two heirs — one a daughter and the other a daughter of a deceased daughter — the defendant.

The complainant claims that by the will of the testator, his widow took only a life-estate in the real estate, and that as the reversion was not disposed of by the testator, the two heirs became tenants in common, each owning an undivided half thereof.

The defendant contends that the widow took a fee; and that as the widow died intestate, the reversion descended to herself as the only surviving heir.

The first question therefore is, what estate did the widow take under the fourth item of the will.

It is common knowledge that the language adopted by the testator — " all my real estate, together with any and all right, title and interest which I have in and to any and all real estate, or any and all which I may hereafter acquire " — would be ample in a devise, without any words of inheritance or limitation, even before any statutory provision relating thereto to carry the fee. And the statute goes still further by providing that, a devise of land conveys all the estate of the devisor therein, unless it appears that he intended to convey a less estate. R. S., c. 74, § 16. The omission from the several subsequent revisions of the word " clearly " next before " appears " in the revision of 1841, c. 92, § 26, does not change the meaning. The inevitable conclusion must therefore be that the widow took a fee, unless it clearly appears by the will that a less estate was intended.

And we are of opinion that the words — "to remain hers so long as she shall be or remain unmarried after my decease"— are words of limitation which clearly show it to have been the intention of the testator to limit the duration, at longest, to the natural life of his widow. They can mean no more than "during widowhood" (*Loring* v. *Loring*, 100 Mass. 341), and the term must be considered to be measured by the life of a person in *esse*. 1 Wash. R. P. 63. Such and similar phrases have ever since the time of Lord COKE been so construed. *Mansfield* v. *Mansfield*, 75 Maine, 512 and cases there cited. 1 Wash. R. P. 103; Bac. Ab. 454; *Dole* v. *Johnson*, 3 Allen, 364.

The last case cited, so far as this question is concerned, is very much like the one at bar. The language of the devise to the widow in that was: "All my real and personal estate, together with any and all estate, right or interest which I may acquire after the date of this will, as long as she shall remain unmarried and my widow." And in that case as in this there was no devise over.

And on the question of intestacy — which consideration has been urged here — the court, after remarking that the preventing of intestacy is an object generally to be sought in the construction of wills, say: "the will does not anywhere profess to dispose of the whole estate; and as to the remainder of his real estate, after the estate for life or widowhood devised to his wife, no disposition is made of it. It is certain therefore that, to some extent, it was his intention to die intestate." We may well adopt this language, although general introductory words, such as "touching all my temporal estate" and the like, may have some effect in the construction of subsequent devises, are not of themselves sufficient to extend a devise for life to a fee. 3 Greenl. Cr. 176 and note.

As the widow therefore, by force of the clear, apt and explicit words of the will and not by implication, took a life-estate only, the contingent authority, "in case of necessity to sell any part of the estate for her support and maintenance during her widowhood" does not enlarge her estate to an absolute fee. *Warren* v. *Webb*, 68 Maine, 137; *Stuart* v. *Walker*, 72 Maine, 146.

Such authority confers only a power and not property. *Ayer* v. *Ayer*, 128 Mass. 575; *Burleigh* v. *Clough*, 52 N. H. 267; *Herring* v. *Barrow*, 13 Ch. D. 144; *Rhode I. H. Tr. Co.* v. *Com. N. Bank*, 1 E. Rep. 44. This construction gives full legal force to the language and intention of the testator.

It is urged that the clause — " but if she shall marry again then, from that time, she shall be entitled to receive only one-third part of all that remains," gives her, in case of marriage, one-third in fee — which would result in giving her a larger estate in quality if she acted against the wishes of her husband than she would receive if she acted in accordance therewith, by remaining unmarried. But we do not so understand it. This clause of itself gives her nothing. It only reduces the quantity of property, in case the contingency happens which was given to her by the former clause which alone contains words of devise. In other words, if she married, she was then only to have one-third of the estate devised for life less what she might dispose of under the power — just what would be equivalent to her dower.

The widow not having married again, we have no occasion to pass upon the question of the restraint of marriage; and if we had, we think the preponderance of authority allows a husband to consider the probabilities whether or not his children would be so well cared for if his widow formed a second alliance and became liable to be the mother of a second family, and govern the disposition of his property accordingly. 1 Jar. Wills, (R. & T. ed.) 564 and note 29. And it seems to be the opinion of the English Chancery court that the same rule applies to widowers as to widows. *Allen* v. *Jackson*, 1 Ch. D. 399.

Nor can the clause — " It is my desire and will that said real estate shall remain as it is now for twenty years," &c., have any influence upon the life-estate or upon the reversion — upon the life estate, for the testator could not restrain the alienation even of a life-estate, *Turner* v. *Hallowell Sav. Inst.* 76 Maine, 527, 530; nor upon the reversion, for it being undevised, its control is not governed by the will. *Nickerson* v. *Bowly*, 8 Met. 424, 430.

Much stress has been laid upon the alleged real intention of the testator. But his intention, as deduced from the language of the will, is the criterion for its interpretation; and when thus ascertained, it is only to have effect provided it is consistent with the rules of law. *Warren* v. *Webb*, 68 Maine, 135. And the intention contended for, however plausible it may appear, cannot have effect because the rules of law will not permit. Moreover we think it quite as certain that the testator really intended what the law declares he said: that his widow should not only have the personal property but a life-estate in the real estate with power to sell any of it for her comfort during her widowhood, and in case she married again then what would be equivalent to dower, and the balance to descend to his and her children.

The allegation in the answer, unsupported by any evidence, that the widow did exercise the power given her is not relied upon in the argument.

Our opinion therefore is that by the will the widow took a life-estate, with a contingent power to sell any part of it during her widowhood which power she never exercised; that the reversion, being undisposed of by the testator, vested in his two heirs — daughter and granddaughter — subject to the contingency of the exercise of that power by the widow, or of a sale by his executor for the payment of debts which he did not leave or have been paid (*Rich* v. *Rich*, 113 Mass. 197, 199); and that the complainant being sole devisee of the daughter, holds under the will, as tenant in common with the defendant, each share being one undivided half.

The plaintiff also seeks for partition of the premises.

Between tenants in common partition is a matter of right and not of discretion, whenever any one of them will not hold and use the property in common. *Parker* v. *Gerard*, Amb. 236; *Agar* v. *Fairfax*, 17 Ves. 533; S. C. White & T. L. Cas. 516; *Hanson* v. *Willard*, 12 Maine, 142, 147; *Wood* v. *Little*, 35, 107; *Allen* v. *Hall*, 50 Maine, 253, 263. And courts of equity, on account of their superior methods and procedure, not only long ago assumed and exercised, concurrently with courts of

law, jurisdiction of partition of land thus held (1 Sto. Eq. § § 643 *et seq.*) but equitable jurisdiction was expressly conferred nearly thirty years ago. R. S., (1857) c. 77, § 5, cl. 6; *Wilson* v. *E. & N. A. R. Co.* 62 Maine, 112, 114. Moreover when one tenant has received more than his share of the rents and profits, an accounting may be directed and reimbursement decreed. R. S., c. 77, § 5, cl. 6; *Leach* v. *Beattie*, 33 Vt. 195; 3 Pom. Eq. § 1389; 1 Sto. Eq. § 655.

To entitle the plaintiff to a decree for partition he must show that his legal title is clear. This expression with very little variation runs down through all the cases and text books. *Cartwright* v. *Pultney*, 2 Atk. 380; *Parker* v. *Gerard*, Amb. 231; 1 Sto. Eq. § 653; 3 Pom. Eq. § 1388. One court says — " in a suit in equity for partition, the legal title of the parties is never meddled with by the court. The individual rights of the parties to participate in the division, or to call for it, may come up, but not the simple question of conflicting title to the land. A plaintiff who comes into equity for partition must show a clear legal title." *Stuart's Heirs* v. *Coalter*, 4 Rand, 74. Some of the authorities say that where there are suspicious circumstances about the legal title, the decree will not be made. *Cartwright* v. *Pultney, supra.* The doctrine almost universally held is that if the plaintiff's legal title is involved in doubt and is disputed and not established — as where it appears that the title depends upon forged deed ( *Cartwright* v. *Pultney, supra* ) ; or upon a settlement of a boundary (*Stuart's Heirs* v. *Coatler, supra*) ; or want of sufficient delivery of a deed (*Nichols* v. *Nichols*, 28 Vt. 228) ; and for various other causes (Freem. Cot. & Part. § 502) ; the court will retain the bill to give the plaintiff a reasonable opportunity to establish his title at law; when he has done that decree partition according to his established right. *Cartwright* v. *Pultney, supra*; *Wilkin* v. *Wilkin*, 1 Johns. Ch. 111; *Phelps* v. *Green*, 3 Johns. Ch. 302; *Ramsay* v. *Bell*, 3 Ired Eq. 209 ; *Wisely* v. *Findlay*, 3 Rand. 361; *Howey* v. *Goings*, 13 Ill. 95 ; S. C. 54 Am. Dec. and note.

So there are cases holding that when the title of the parties depends upon the construction of a will that question must first

be settled at law. *Slade* v. *Barlow*, L. R. 7 Ch. 296 ; *Manners* v. *Manners*, 1 Green's Ch. 384. But where the defendant, as in this case, is in possession claiming to hold it under a will and the complainant files his bill under the statute to have the will construed, for accounting and partition ; the court, in the absence of any defect in the latter's title, having acquired jurisdiction for the purpose of construing the will, has authority to do complete justice between the parties, by compelling an account and partition. *Scott* v. *Guernsey*, 60 Barb. 178 ; *Dameron* v. *Jameson*, 71 Mo. 105 ; *Howey* v. *Goings, supra* ; Freem. Cot. & Part. § 449.

But assuming the parties to have been tenants in common with the right of possession on the decease of the widow, the defendant disputes the present title of the plaintiff on the ground that his conveyance to Bulfinch in February, 1875, was in fraud of the bankrupt law and that the title by virtue of his bankrupt proceedings passed to his assignee who, if anyone, should have brought the bill.

On the other hand the plaintiff contends that the conveyances through Bulfinch and J. H. Nash to himself—the latter more than a year prior to the filing of his bill—made his legal title clear ; and that as the defendant does not claim under the assignee, she cannot protrude that title.

We do not understand the rule to be that the defendant cannot raise that question as a defence here, unless she claims under the assignee, although two cases — *Portis* v. *Hill*, 14 Tex. 69, and *Burleson* v. *Burleson*, 28 Tex. 382, 413, seem to so hold. For all the other cases which an extended search has enabled us to find hold to the contrary ; and the reason assigned in some of them would seem decisive, viz : that while at law partition is effected by the judgment of a court of law and delivery of possession in pursuance of it, equity consummates partition by directing and compelling mutual conveyances by the parties (*Cartwright* v. *Pultney, supra* ; *Whaley* v. *Dawson*, 2 Sch. & Lef. 366 ; *Gay* v. *Purpart*, 106 U. S. 679, 690) ; or by decreeing a pecuniary compensation to one of the parties for owelty ( *Wilkin* v. *Wilkin, supra*, 1 Sto. Eq. § 654) ; or by

ordering a sale of the premises and a division of the proceeds.
3 Pom Eq. § 1390.   Therefore to enforce a decree of partition
between these parties in any of these modes, especially of the last
two named, could not bind persons not parties; and if the
assignee's title should subsequently prove good, the defendant
would be in an undesirable plight.   *Gay* v. *Parpart, supra,* is
in harmony with this view, and contains nothing inconsistent
herewith.   Moreover the defendant's title being unquestioned,
she ought not to be drawn into any litigation concerning any
controversy between the plaintiff and some third person as to
the plaintiff's title.   *Whaley* v. *Dawson, supra.*

We are therefore of opinion that before partition can be
decreed, the plaintiff must establish, by some independent
proper suit or action, his legal title.

But since we have settled what we suppose to be the principal
contention — the construction of the will, and the parties may,
perhaps, feel inclined to save further expense and delay by an
amicable arrangement, we add by way of suggestion :

Assuming that the conveyance to Bulfinch, though made some
seven months prior to the commencement of the plaintiff's pro-
ceedings in bankruptcy, was in fraud of the bankrupt law and
that the land vested in the assignee by operation of law — how
long does it remain there without being asserted by the assignee ?
An assignee, unlike an executor of a deceased testator, is not
bound to take possession of all property that thus vests in him.
It may be onerous property depending upon uncertain litigation.
He may elect to take it or not to take it; and if he elects not to
take it, then it survives to the bankrupt unless he has disposed
of it.   Moreover he must elect within a reasonable time ; other-
wise it is deemed an election to reject it. *Amory* v. *Lawrence,* 3
Cliff. 523, 535–6 and cases there cited.

Again, by U. S. R. S, § 5057, "No suit either at law or in
equity, shall be maintainable in any court between an assignee
in bankruptcy and a person claiming an adverse interest, touch-
ing any property or right of property transferable to or vested
in such assignee, unless brought within two years from the time
when the cause of action accrued for or against such assignee."

Now the legal title passed to Bulfinch in February, 1875, and thence to J. H. Nash, in July 1875, and both deeds were duly recorded, showing the nominal consideration. Did not the failure of the assignees to move within two years make valid the title of J. H. Nash? *Meeks* v. *Olpherts*, 100 U. S. 564; *Trimble* v. *Woodhead*, 102 U. S. 647, 649.

If not arranged, the bill will be retained, so far as partition is concerned, to afford the plaintiff an opportunity, under R. S., c. 104, § § 47 and 48, or some other mode which may be proper, to establish his legal title, when further proceedings will be had according to his established rights.

> *Bill sustained so far as construction of the will is concerned; but bill retained to allow complainant to establish his legal title, when further proceeding will be had according to his established rights. Question of costs reserved till final decree.*

Peters, C. J., Danforth, Emery, Foster and Haskell, JJ., concurred.