FIRST PORTLAND NATIONAL BANK, SUCCESSOR, EX'R.
*vs.*
KALER-VAILL MEMORIAL HOME, ET AL.

Cumberland.   Opinion, May 6, 1959.

First Portland National Bank, Successor, Ex'r.
*Drummond & Drummond*
vs.
Kaler-Vaill Memorial Home *et al.*

> *Linnell, Perkins, Thompson, Hinckley & Thaxter* for
> Vestry of Trinity Church of St. Augustine & Protes-
> tant Episcopal Church in Diocese of Florida & Ca-
> thedral of St. Luke; *Porter Thompson* and *Royden
> Keddy* for Walter Vaill; *Hutchinson, Pierce, Atwood
> & Allen* for Frederick Vaill, Jr.; *Ralph W. Farris,
> Asst. Atty. Gen.; John F. Dana pro se; Stephen S.
> Kaler pro se; Arthur A. Peabody & Velma G. Pea-
> body* for Kaler-Vaill Memorial Home.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SIDDALL, J. On report. This is a bill in equity brought by First Portland National Bank as successor executor of the will of Edward Griswold Vaill late of Scarborough for the interpretation and construction of the provisions of his will, and for instructions as to the disposition of one-fifth of his residuary estate upon the death of his wife. The case is before this court on report by agreement of all parties, upon the pleadings and so much of the evidence as is legally admissible, for such final decision as the rights of the parties may require.

The pertinent provisions of the will are set forth in the twelfth item thereof. After giving the residue of the testator's estate to his wife for life, the will contained the following provision:

"12. Upon the death of my said wife, whatever of my estate then remains undisposed of, either principal or income, together with all accumulations which may have accrued to it since my decease, shall be divided into five equal parts, and the proper legal representative of my estate at that time shall convey, assign and deliver as follows:

One equal part to The Cathedral Church of St. Luke's at Portland, Maine, for the upkeep of the church buildings at said Portland;

One equal part to Trinity Episcopal Church of St. Augustine, Florida;

One equal part to the Bishop of the Episcopal Church of the Diocese of Florida, in memory of my sister, Julia Cornelia Vaill, the same to be used as said Bishop shall decide is most expedient from time to time for the benefit of the girls in said Diocese.

One equal part to the Kaler-Vaill Memorial Home located at said Scarborough for the general purposes of said Home;

> One equal part to Walter E. Vaill of Litchfield, Connecticut, provided he be living at the time of my decease."

The defendants in the bill are Kaler-Vaill Memorial Home, a corporation organized under the laws of Maine and located at Scarborough; John F. Dana and Stephen S. Kaler, executors of the will of Addie Kaler Vaill, also known as Addie K. Vaill, widow of the testator; Frederick S. Vaill, Jr. nephew and sole heir-at-law of the testator; Cathedral Church of Saint Luke, Portland, a Maine corporation, The Vestry of Trinity Church of St. Augustine, a Florida corporation, The Protestant Episcopal Church in the Diocese of Florida, a Florida corporation, and Walter E. Vaill, the residuary beneficiaries under said will other than "Kaler-Vaill Memorial Home . . ."

Frank F. Harding as Attorney General for the State of Maine also was named as a defendant, but no interest under said will is now claimed by the state of Maine.

It will be noted that the names of the defendant church corporations differ slightly from those named in the will, but no question is raised that these defendants are not those designated in the will. For convenience, the defendant Kaler-Vaill Memorial Home is hereafter called Memorial Home.

The dispute in the case concerns that one-fifth part of the residue given to "Kaler-Vaill Memorial Home located at said Scarborough for the general purposes of said Home." The record shows that the testator died on May 21, 1944. His will was dated July 17, 1941, and was duly allowed on June 6, 1944. At the time of his death the testator left a widow, Addie Kaler Vaill, also known as Addie K. Vaill, and as his sole heir-at-law, a nephew, the defendant Frederick S. Vaill, Jr. Neither the defendant Memorial Home nor any other legal entity of that or similar name existed in the state of Maine at the time of the death of the tes-

tator, or at any time prior thereto, or at any time thereafter until the incorporation of the defendant Memorial Home under the name of Kaler-Vaill Memorial Home. This corporation was organized under the provisions of R. S., 1930, Chap. 70, as amended. (Now R. S., 1954, Chap. 54.) A certificate of incorporation was filed with the Secretary of State on August 31, 1944, in which the purposes of the corporation are stated as follows:

"To provide a suitable home for such respectable aged and needy women, residents of Scarborough, as by reason of age and other circumstances shall be deemed proper subjects for such provision, and to provide a temporary home for such convalescent women, residents of Scarborough or elsewhere, as shall be deemed proper subjects for such provision. The corporation shall not be conducted for profit and no part of its net earnings shall inure to the benefit of any member of the corporation, or any individual, interested in the activities of the corporation."

At the time of the hearing, the defendant Memorial Home offered in evidence against objection the testimony of Charlotte Stevens, a lifelong friend of Addie Kaler Vaill and a friend of the testator and said Addie since their marriage. This witness testified that the home occupied by the testator and his wife was known as the Kaler home prior to the marriage of Addie Kaler and the testator, and after the marriage it was known as the Kaler-Vaill home. She also testified that the mailbox in front of the home was marked KALER
VAILL.

This witness also testified of conversations between the testator and his wife, particularly in April, May, and June of 1941, generally relating to the use after their deaths of the home known as Kaler-Vaill home, as a home for aged women of Scarborough. Objections were duly made to the admission of this testimony.

Addie Kaler Vaill died on March 17, 1957. Her will dated April 4, 1955, was duly allowed on April 3, 1957. The defendant Memorial Home offered in evidence a certified copy of the will on the grounds "It is a fact of independent significance." Objection to the admission of this evidence was duly made. By the terms of her will, Addie Kaler Vaill, after numerous bequests, left a sizeable bequest and devise, including her homestead (known as Kaler-Vaill home) to the defendant Memorial Home. The testatrix expressed a desire that her homestead property, with such additions thereto as might later be made, be called the Kaler-Vaill Memorial Home as a permanent home for certain respectable, aged, and needy women of Scarborough and as a temporary home for certain convalescent women residents of Scarborough or elsewhere who might be deemed worthy of admission. The residue of testatrix's property was given to the Canal National Bank of Portland as trustee for the benefit of said Kaler-Vaill Memorial Home. Her will also contained a statement that her husband had left one-fifth of his residuary estate upon her death to said "Kaler-Vaill Memorial Home Corporation."

Aside from property left by the will of Addie K. Vaill to the said defendant Memorial Home, it has not at any time owned any property, real or personal, and at no time has either (1) received any income or incurred any liability, except the liabilities and expenses incident to its organization, (2) carried on any corporate business except to adopt a vote authorizing the acceptance of the bequest under Item 12 of the will of the testator, or (3) performed any of the functions or done any acts necessary to carry out the purpose expressed in its certificate of organization or otherwise, other than the acceptance of its charter.

After the death of the testator, his widow, Addie Kaler Vaill, took steps to organize the defendant corporation, Kaler-Vaill Memorial Home, and she was in her lifetime the president and one of the directors of the corporation.

The issues to be decided in this case are as follows:

1. Does the defendant Memorial Home take the one-fifth residuary share given to the "Kaler-Vaill Memorial Home located at Scarborough for the general purpose of the Home," as the designated beneficiary in said will?

2. If not, does the said Memorial Home or any charity take the said share under the cy pres doctrine?

3. If neither the said Memorial Home nor any other charity is entitled to take the disputed share, does such share become intestate property, or does it pass under the will to the remaining residuary beneficiaries?

The defendant Memorial Home maintains that it is entitled to receive the said share either as the designated beneficiary or by application of the cy pres doctrine. The executors of the will of Addie Kaler Vaill take no position on the question of whether or not the defendant Memorial Home is entitled to receive any part of the residuary estate. They do contend that if it should be decided that the said defendant Memorial Home as residuary legatee or by application of the cy pres doctrine is not entitled to said one-fifth share of the residue of testator's estate, so much of said share as does not pass to said Memorial Home should pass as intestate property, one-half to the nephew, Frederick S. Vaill, Jr., and one-half to the estate of Addie Kaler Vaill. The Cathedral Church of St. Luke takes the position that it does not desire to oppose the right of the said Memorial Home to take said one-fifth share of the residue, but if said Memorial Home cannot take, that said share should be divided among the remaining residuary legatees. The defendants Vestry of Trinity Church of St. Augustine and The Protestant Episcopal Church in the Diocese of Florida take the position that the said Memorial Home cannot take said share, and that it should be divided among the remaining residuary legatees. Walter E. Vaill takes the same position. Frederick S. Vaill, Jr., takes the position that the

said Memorial Home cannot take said share, and that it passes as intestate property to him and the estate of Addie Kaler Vaill in equal shares.

Is the defendant Memorial Home the designated beneficiary of said one-fifth share of the residue of testator's estate?

The cardinal rule to be applied in the construction of a will is that the intention of the testator when clearly expressed in the will must be given effect, provided it be consistent with legal rules.

The rule is well set forth in *Gorham* v. *Chadwick, et al.,* 135 Me. 479, 482, 483, 200 A. 500, as follows:

"The cardinal rule for the interpretation of wills is that they shall be construed so as to give effect to the intention of the testator. It is the intention, however, gathered from the language used in the testament which governs. *Blaisdell v. Hight,* 69 Me., 306; *Torrey v. Peabody,* 97 Me., 104, 53 A., 988; *Palmer v. Estate of Palmer,* 106 Me., 25, 75 A., 130; *Spear v. Stanley,* 129 Me., 55, 149 A., 603. And it is the intention of the maker of the will at the time of its execution. Although a will speaks only from the maker's death, the language used in the testament must be construed as of the date of its execution and in the light of the then surrounding circumstances. Another and accurate statement of this rule is that a will is not operative until the death of the maker and then speaks his or her intention at the time of its execution. *Cook v. Stevens,* 125 Me., 378, 134 A., 195; *Spear v. Stanley,* supra; In re *Mandell's Estate,* 252 Mich., 375, 233 N. W., 230."

In *Belding* v. *Coward,* 125 Me. 305, 308, 133 A. 689, the court said:

"The 'pole star' of testamentary construction is the intention of the testator, when clearly expressed in the will. When so expressed, and it violates no rule of law or public policy, it must

be given effect. It overrides precedents and technical rules of construction. *Bradbury v. Jackson,* 97 Me., 449. All rules of construction are designed to ascertain and give effect to the intention of the testator, and that intention is to be ascertained exclusively by the words of the will as applied to the subject matter under the surrounding circumstances. *Andrews v. Applegate,* 223 Ill., 535; 79 N.E., 176; 12 L.R.A., (N.S.), 661. The intention of the testator, expressed in his will, must prevail, provided it be consistent with rules of law, and this rule is one to which all other rules must bend, says Chief Justice Marshall in *Smith v. Bell,* 6 Pet., 68; 8 U.S., (L. ed.), 322. See also *Methodist Church v. Fairbanks,* 124 Maine, 187; *Barry v. Austin,* 118 Maine, 51; *Gregg v. Bailey,* 120 Maine, 263."

This principle has been enunciated so often that no other citations of authority are necessary.

The intention of the testator is that which existed at the time of the execution of the will. *Gorham* v. *Chadwick, et al., supra; N. E. Trust Co., et al.* v. *Sanger, et al.,* 151 Me. 295, 301, 118 A. (2nd) 760; *Butler* v. *Dobbins,* 142 Me. 383, 385, 53 A. (2nd) 270.

The testator's intent must be found from the language of the will, which in cases of doubt may be interpreted in the light of conditions existing at the time the will was executed.

This principle is stated in *Cassidy, et al.* v. *Murray, et al.,* 144 Me. 326, 328, 68 A. (2nd) 390, in the following language:

"It is the intention of the testator which must prevail in the construction of a will. But that intention must be found from the language of the will read as a whole illumined in cases of doubt by the light of the circumstances surrounding its making. *Lord v. Bourne,* 63 Me. 368; 18 Am. Rep. 234; *Nash v. Simpson,* 78 Me. 142; 3 A. 53; *Davis v. Callahan,* 78 Me. 313; 5 A. 73; *Bryant v. Bryant, et als.,* 129 Me. 251; 151 A. 429."

In *Knapp, Aplt. from Decree Judge of Probate,* 149 Me.
130, 140, 99 A. (2nd) 331, our court said:

"The intention of the testator must be gathered
from the language that he used in the will. It may
be sought within the 'four corners of the will.' If
the language in a will is doubtful, or ambiguous,
conditions existing when the will was made may
be considered, if they were known to the testator
and 'may be supposed to have been in the mind of
the testator.' *Palmer v. Estate of Palmer,* 106 Me.
25, 28."

Among the more recent cases in which this rule has been
applied are the following: *Berman v. Shalit,* 152 Me. 266,
268, 128 A. (2nd) 345; *New England Trust Co., et al.* v.
*Sanger, et al., supra; Belfast v. Goodwill Farm, et al.,* 150
Me. 17, 23, 103 A. (2nd) 517; *Strout v. Little River Bank &
Trust Co.,* 149 Me. 181, 183, 99 A. (2nd) 342; *Butler* v.
*Dobbins, supra.*

In the instant case the only reference in the will, directly
or indirectly, to the Kaler-Vaill Memorial Home is that con-
tained in the twelfth item in which the testator leaves one-
fifth of his remaining residuary estate to the "Kaler-Vaill
Memorial Home located at said Scarborough for the gen-
eral purposes of said Home." The will contains no infor-
mation from which the "general purposes of said Home"
may be ascertained. No organization of that name located
at Scarborough or at any other place in this state was in
existence until after testator's death, and no words in the
will indicate that the testator contemplated the beneficiary
should come into existence at some later time. On the con-
trary, the words used by the testator indicate the then
existence of the beneficiary. Under these facts the language
contained within the four walls of the will itself fails to
indicate an intention on the part of the testator to make the
defendant Memorial Home a beneficiary under his will.

We must therefore consider whether the right of the Me-
morial Home to take under the will has been established by

admissible extrinsic evidence, including statements or declarations made by the testator. Such evidence was objected to, and under the stipulation we are called upon to determine whether this evidence or any part thereof is admissible, and if so, whether it is of such a character as to show the testator's intention to make the defendant Memorial Home the beneficiary of the disputed share.

In determining the admissibility of extrinsic evidence, we must do so with the principle in mind that it is the province of the court to construe the will but not to rewrite it. We are not only concerned with the parol evidence rule but also with the provisions of our statute relating to the transmission of property by will (R. S., 1954, Chap. 169, Sec. 1), which require a will to be in writing and executed by the testator, or for him at his request, and in his presence, and subscribed in his presence by three credible attesting witnesses not beneficially interested under the will. Our courts have been zealous in upholding the right of a testator to dispose of his property as he sees fit, but have been equally zealous in safeguarding a testator from imposition or mistake by requiring a strict adherence to the requirements of the statute. The statute "clearly prescribes the method of transmitting property by will, which the court is not at liberty to ignore, although in particular instances the actual intention and desire of a person respecting the disposition of his property may be defeated by adhering to the rule prescribed." *Fitzsimmons* v. *Harmon,* 108 Me. 456, 458, 81 A. 667.

The cases previously cited establish the principle that where doubt or ambiguity exists, evidence of surrounding circumstances known to the testator at the time of making his will are admissible for the purpose of showing the testator's intent. ". . . all the surrounding circumstances of a testator, - -his family, the amount and character of his property. . ." *Bodfish* v. *Bodfish,* 105 Me. 166, 171, 73 A.

1033; "the relations between the testator and his intended beneficiaries, the amount and nature of his estate, and other relevant circumstances which legitimately tend, in cases of doubt, to show the probability of his intentions, one way rather than another." *Tapley* v. *Douglass,* 113 Me. 392, 394, 395, 94 A. 486; ". . . any evidence may be given of facts and circumstances which have any tendency to give effect and operation to the words of the will; such as the names, descriptions and designations of persons, the relations in which they stood to the testator, the facts of his life, as having been single or married one or more times, having had children by one or more wives, their names, ages, places of residence, occupation; so of grandchildren, brothers and sisters, nephews and nieces, and all similar facts." *Howard* v. *The American Peace Society,* 49 Me. 288, 295, 296. Such evidence is admitted for the purpose of enabling the court to put itself in the position of the testator at the time of the signing of the will and thereby render it better able to interpret the language used in the will.

Our court has also recognized that under certain circumstances extrinsic evidence may be introduced to establish the identity of a beneficiary. Beneficial bequests are not to be defeated by mere misnomers. In *Trust Co.* v. *Pierce,* 126 Me. 67, 69, 136 A. 289, our court said:

"It is a familiar rule of interpretation that when the name or designation in the will does not designate with precision any person or corporation, but so many of the circumstances concur to indicate that a particular person or corporation was intended, and no similar conclusive circumstances appear to distinguish any other beneficiary, the person or corporation thus shown to be intended will take. *Preachers' Aid Society* v. *Rich,* 45 Me., 552; *Howard* v. *American Peace Society,* 49 Me., 288; *Tucker* v. *Seaman's Aid Society et als,* 7 Met. (Mass.), 188. Extrinsic evidence is always admissible to identify a devisee or legatee, and beneficent bequests are not to be defeated by mere

> misnomers. This rule applies to a devise or a bequest to a corporation. 40 Cyc, 1447, and cases cited; 28 R.C.L., 276. Numerous cases in support appear in notes of 47 L.R.A. (N.S.), 539, and Ann. Cas. 1915 B, 30."

Another class of cases in which extrinsic evidence is admitted to establish the identity of a beneficiary arises where the description of the devisee is clear upon the face of the will, but it is found that a legacy is claimed by more than one person whose description fits the words used in the will. *Howard* v. *The American Peace Society*, 49 Me. 288, 292.

These principles are not, however, involved in the instant case, as neither misnomer, nor the existence of two beneficiaries answering the description contained in the will are involved under the facts of this case.

Another class of cases in which extrinsic evidence is allowed to identify a beneficiary arises in cases of bequests to beneficiaries whose identity may not be determined at the time of making the will, but the will contemplates their future identification by methods set forth in the will. Thus in *Lear* v. *Manser*, 114 Me. 342, 96 A. 240, in which the testator left the residue of his estate "to such institutions as shall care for me in my last sickness," the identity of the person who cared for the testator during his last illness was shown by extrinsic evidence. The principle involved in this class of cases is not applicable to the case at bar.

There is, however, a clear distinction between the admission of extrinsic evidence of *facts and circumstances* existing at the time of the execution of the will and the admission of *testator's declaration of intent*. In the case of *Bryant* v. *Bryant, supra,* at page 258, the court said:

> "In the construction of a will, parol testimony is frequently of some assistance for the purpose of identifying the beneficiary, or the subject matter of the devise, or explaining the situation and circumstances surrounding the testator at the time of

making the will to be construed, or for the purpose of throwing some light upon the sense in which words of doubtful and ambiguous meaning were used. But the testator's declarations of intention, whether made before or after the making of the will, are alike inadmissible. 1 Greenleaf on Evidence, Sec. 230; *Farnsworth v. Whiting,* 102 Me., 296."

In the case of *Tibbetts* v. *Curtis,* 116 Me. 336, 101 A. 1023, the court upheld the full opinion of the Judge of Probate for Androscoggin County, in which he made the following statement:

"It is familiar law and not disputed, that the intention of the testator collected from the whole will and all the papers which constitute the testamentary act, is to govern; that the intent is to be sought in the will as expressed, and that the declarations of the testator before or after the will was made cannot aid the interpretation. 'It may well be doubted if any other source of enlightenment in the construction of a will is of much assistance than the application of natural reason to the language of the instrument, under the light which may be thrown upon the intent of the testator by the extrinsic circumstances surrounding its execution and connecting the parties and the property devised with the testator and with the instrument itself.' *Clark v. Johnston,* (Miller, J.) 18 Wall., 493, cited and quoted in *Bradbury v. Jackson,* 97 Maine, 455, 456."

Page on Wills, Vol. 4, page 660, contains the following language:

"With the exception of cases in which language is used which seems intelligible and consistent, but which applies equally to two or more persons or things, evidence of testator's declarations, whether made before or after the will, including his instructions to the scrivener, and including declarations at the time of execution and including those declarations which are in writing, if not executed in accordance with the Statute of Wills,

are inadmissible to show testator's actual intention, apart from, in addition to, in opposition to the legal effect of the language which is used by him in the will itself. This is true even though the evidence is offered to show that due to mistake the will does not express the testator's true intentions, or that the person drafting the will erroneously failed to carry out the testator's instructions."

The strictness with which the requirements of the statute relating to the making and execution of wills is viewed is well illustrated by the so-called "Incorporation By Reference Cases." In the case of *Sleeper* v. *Littlefield*, 129 Me. 194, 151 A. 150, one of the questions involved related to the admission as a part of the will of the testatrix of a book marked "A" on the inside cover and referred to in the will by a direction to her executor to distribute among her friends, and carry out the directions "as will be found in a little book marked A on inside cover, which will be found with my will." The court in that case said on page 199:

"If we were to lay down the rule in this state that papers or memoranda may be incorporated in a will by reference, the evidence in this case comes short of proving that the book 'marked A' was in existence and compiled at the time the will was executed. *Fitzsimmons v. Harmon*, 108 Me., 456, 458. In fact there is internal evidence in the book itself that it was not. Where such incorporation by reference is permitted, compliance with the statute of wills requires that the paper or document sought to be incorporated by reference must be complete and in existence at the time and clearly described in the will. *Bryan's Appeal*, 77 Conn., 240; *Newton v. Seaman's Friend Soc.*, 130 Mass., 91; *Bemis v. Fletcher*, 251 Mass., 178; Est. of Young, 123 Cal., 339; 68 L.R.A., Anno. 354."

In the instant case we too are concerned with the requirements of the statute of wills. We are asked to admit testimony to show an intent on the part of the testator that

the disputed gift should go to a corporation not organized until after his death, and for purposes which were not set forth in the will. The testator easily could have indicated in his will that the beneficiary was to be subsequently organized, and also could have clearly indicated the purposes for which the bequest was to be used. This was done by the testator in the case of *Swasey* v. *American Bible Society,* 57 Me. 523, 524, in which the court held valid a bequest made in the following language:

> "I give and bequeath and leave in trust to the first Calvinist Baptist Society that may be organized in what is now the first school-district in the town of Bucksport, one thousand (1,000) dollars, for the purpose of buying a lot of land and erecting thereupon a meeting-house for the use of said society, . . ."

Obviously an organization not in existence cannot have defined purposes. The will itself fails to indicate the nature of the purposes intended by the testator, and contains no reference to any writing in existence at the time of its execution from which such intended purposes may be determined. Under the circumstances of this case, the allowance of testimony of the nature given by the witness, however truthful it may have been, for the purpose of showing the intent of the testator as to the purposes of a corporation not in existence, or for the purpose of identifying such a corporation as the named beneficiary in the will, could not only lead in many cases to uncertainty, misunderstanding, mistake, or imposition, but also in effect might allow a testator to modify his will other than in the manner required by the statute of wills. This is the very situation which our statute seeks to avoid, and to allow this testimony in the present case would in effect nullify the provisions of our statute relating to the making and execution of wills. We in no way infer that the testimony of the witness, if admissible,

is sufficiently definite, clear, and certain to accomplish the purpose intended.

The testimony of the witness, Charlotte Stevens, to the allowance of which objections were made, is excluded.

The defendant Memorial Home also offered in evidence a certified copy of the will of Addie Kaler Vaill, testator's widow. The testator's will contained no reference whatever to this document. As a matter of record, this will was not in existence at the time of the execution of testator's will, as it was not executed until April 4, 1955, almost fourteen years after testator's will and over eleven years after his death. As previously stated, Mrs. Vaill's will gave real and personal property to the defendant Memorial Home and contained a statement that her late husband Edward Griswold Vaill had left one-fifth of his residue estate on her death "to said Kaler-Vaill Memorial Home Corporation."

We know of no principle of the law of evidence which warrants the admission of this evidence in the present case, and it is therefore excluded.

The defendant Memorial Home argues that the bequest to the "Kaler-Vaill Memorial Home is an executory bequest; a gift to begin in the future on delivery of the property by the personal representative of the testator. It claims that in view of the fact that it was in existence as a corporation at the date of the death of the testator's widow, it is entitled to take the disputed share. We do not consider it material to the issues of this case to determine whether the bequest was an executory bequest to take effect in the future or a vested remainder. In either case we are confronted with the following circumstances: (1) the will on its face indicated an existing corporation, (2) the defendant Memorial Home was *not* in existence at the time of testator's will, and the purposes of the corporation could therefore not have been known to him at that time, or at

any time before his death, (3) the will contained no indication as to the nature of the purposes to which the testator intended his gift to be applied. To allow the defendant "Memorial Home" to take the one-fifth share of the residue as the beneficiary, under the terms of this particular will, and under the circumstances of this case, would in effect constitute the rewriting of the will rather than an interpretation or construction of it.

We therefore conclude that the defendant Memorial Home does not take as the designated beneficiary under the will.

Does the defendant Memorial Home or any charity take said share under the cy pres doctrine?

Our court in the recent case of *Pierce* v. *How,* 153 Me. 180, 136 A. (2nd) 510, has rendered an exhaustive opinion involving this doctrine. The doctrine is very adequately explained on page 188, 189, of that case, in part as follows:

"The doctrine of cy pres is the principle that equity will, when a charity is originally or later becomes impossible or impractical of fulfillment, substitute another charitable object which is believed to approach the original purpose as closely as possible. It is the theory that equity has the power to mould the charitable trust to meet emergencies."

Before the cy pres doctrine can be applied, three prerequisites must be met. 1. The court must find that the gift creates a valid charitable trust. 2. It must be established that it is to some degree impossible or impractical to carry out the specific purpose of the trust. 3. There must be a general charitable intent. *Pierce* v. *How, supra; Grigson, et al.* v. *Harding, et al.,* 154 Me. 146.

A liberal policy in the construction of charitable trusts has always been maintained in this state. *Bates* v. *Schillinger,* 128 Me. 6, 17, 145 A. 388.

The recent Maine case of *Grigson, et al.* v. *Harding, et al.,* 154 Me. 146, contains an exhaustive review of cases in this and other jurisdiction relating to the validity of trusts for charitable purposes. Recognizing that the liberality of the courts in construing such trusts is not without qualification, the court in that case on page 150, 151, said:

"Our court in common with others has often employed language indicating a sympathetic interest in charitable bequests. '* * * it is liberal interpretation which must be employed in construing charitable trusts. They are favorites of the court in equity. This was the policy announced in the earlier cases * * * and that policy has been constantly and consistently maintained.' *Prime v. Harmon,* 120 Me. 299, 303. It was never intended, however, that such expressions should be interpreted to mean that a benevolent spirit of the court would compensate for a lack of charitable intention on the part of testators. Bogert on Trusts and Trustees, Vol. 2A, Page 62, Chap. 19, Sec. 369 states the rule - - 'But, naturally, this friendly attitude cannot go so far as to create a charity out of a gift which lacks essential elements. The courts are not justified in making over wills and deeds and turning private gifts into charitable ones.' Because charitable trusts are 'favorites of the courts' and the 'language should be liberally construed' does not mean that one party to litigation will be favored to the detriment of the other party, or that the court will adopt partisanship or antagonism in place of even-handed justice. . . . . When it appears that a most worthy and deserving object of charity can be made the recipient of a testator's bounty only if the court is disposed to make a new will for him, the court is without power to act. . . . . 'The heirs at law are not to be disinherited by conjecture, but only by express words, or necessary implication.' *Howard v. The American Peace Society,* 49 Me. 288, 291. This then is the framework within which the court will act. It will construe the language of the testator liberally

to permit his charitable intentions to shine through. It will not invent such an intention where none exists."

What constitutes a valid charitable trust?

A valid charitable bequest must be for a purpose recognized in law as charitable. *Bates* v. *Schillinger, supra.* On page 18 of this case our court defined a charitable trust in the following language:

> "The definition of a 'charitable trust' or a 'public charity' as given in *Jackson v. Phillips,* supra, has been adopted and applied in this state. *Bills v. Pease,* supra; *Haskell v. Staples,* 116 Me., 103. 'A charity in the legal sense, may be more freely defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burden of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.' "

> "The purposes for which such bequest can be used must be charitable only. If the intention of the testator was that the gift could be used for other than charitable uses, it is fatal to the validity of the bequest. If a part may be so otherwise used, all of it may be." *Bates* v. *Schillinger, supra.*

> "If the charity *is definite in its objects,* is lawful, and is to be regulated by a trustee appointed for the purpose, it is sufficient." (Emphasis ours.) *Lewis Pierce, Admr., in Equity,* 109 Me. 509, 511.

> "A trust which by its terms may be applied to objects which are not charitable in the legal sense, and to persons not defined, by name or by class,

is too indefinite to be carried out." *Murdock* v. *Bridges*, 91 Me. 124, 133, 39 A. 475.

"An invalid charitable trust will not be cured by an application of the cy pres doctrine. Thus where the trust is invalid because the court can not ascertain the purpose of the testator or is unable to carry out his plans the cy pres doctrine has no application." The Cy Pres Doctrine in the United States, by Edith L. Fisch, Sec. 5.01.

Having in mind that the purposes for which the bequest may be used must be charitable and charitable only, does the language in the testator's will giving a share of the residue of his estate to the "Kaler-Vaill Memorial Home located at said Scarborough for the general purposes of said Home" create a charitable trust? We are compelled to answer in the negative. For reasons already given the will of Addie Kaler Vaill and the testimony of Charlotte Stevens are excluded from consideration. We must therefore rely upon the terms of the will itself to determine whether the gift was for a purpose recognized by law as charitable. The name "Kaler-Vaill Memorial Home" has no charitable significance, and we are unable to determine the "general purposes of said Home" either from the will or from any other document in existence at the time of the execution of the will, or from any evidence in the case which we are permitted under the rules of evidence to consider.

We must therefore conclude that no valid charitable trust was created as to the disputed share, and that the first prerequisite for the application of the cy pres doctrine has not been met. It is unnecessary to consider the other remaining essentials to the application of this doctrine.

Neither the defendant Memorial Home nor any charity takes the disputed share under the cy pres doctrine.

The remaining question concerns the disposition of the disputed share. Does it go to the other residuary beneficiaries or does it pass as intestate property?

It may be well to note that before disposition of the residue of his property, the testator had in previous items in his will devised certain real estate in Portland to his wife for life and upon her death to Frederick S. Vaill, Jr. He also made specific bequests to certain churches, including one of the residuary beneficiaries, The Salvation Army, The Children's Hospital, the Animal Refuge League, and bequests to certain friends. The residue was given to his wife for life with power to use the principal for her support, with the request that she pay to Walter E. Vaill, if living at testator's decease, $500 annually during his lifetime, provided such annuity would not limit the support of his wife.

Property not disposed of by will shall be distributed as the estate of an intestate. R. S., 1954, Chap. 169, Sec. 2.

The rule is well settled in Maine, and in a majority of other jurisdictions as well, that the lapsed portion of a residuary devise or bequest does not inure to the benefit of the other residuary beneficiaries under a residuary devise or bequest to several beneficiaries not as a class, but becomes intestate property unless the contrary intention of the testator clearly appears from the language of the will.

" 'When a legacy lapses which is a part of the residue it cannot fall again into the residue. It must pass as intestate property.' Rugg, C.J., in *Crocker v. Crocker*, 230 Mass., 482. See also to same effect *Morse v. Hayden*, 82 Maine, 230; *Lyman v. Coolidge*, 176 Mass., 9; *Dresel v. King*, 198 Mass., 548; *Kerr v. Dougherty*, 79 N.Y., 346; *Hard v. Ashley*, 117 N.Y., 606; *Burnet v. Burnet*, 30 N.J., Eq., 595; 40 Cyc., 1519, and cases cited - - 44 L.R.A., N.S., 811 (Note).

The defendant, however, says that this rule does not apply when the residuary bequest is to a class of persons, but that upon the death of one or more it passes to those of the class living at the decease of the testatrix. This is true. In such case there

is no lapse in any proper sense. The individual dies but the class designated as the taker of the residue remains in esse.

But the legacy in the instant case is plainly not to a class. It is to four named persons 'in equal parts share and share alike.' The individuals were not connected with the testatrix or with one another by common kinship. Apparently they had nothing in common except the good fortune of being legatees in the same will.

When legatees are designated by name and the character of the estate bequeathed is indicated by the words used in Mrs. Morgan's will, 'in equal parts share and share alike,' there is a strong presumption of testamentary intent that the legatees shall take as individuals and not as a class. *Blaine v. Dow,* 111 Maine, 483, and cases cited; *Hay v. Dole,* 119 Maine, 424; 28 R.C.L., Page 261; *Dresel v. King,* supra, 44 L.R.A., N.S. 811 (Note). This presumption may indeed be controlled by plain language in the will manifesting a contrary intent. But no such controlling language is found in Mrs. Morgan's will. *Fairbank's Appeal,* 104 Maine, 333, and *Estate of Brown,* 86 Maine, 572, are upon this ground plainly distinguishable from the instant case." *Strout v. Chesley,* 125 Me. 171, 173, 174.

For a discussion of the same principle, see also *Davis et al.* v. *McKown,* 131 Me. 203, 160 A. 458; Page on Wills, Vol. 4, p. 195; Annotations in 28 A. L. R. 1237, 139 A. L. R. 868, and 36 A. L. R. (2nd) 1117; 57 Am. Jur. 977; 96 C. J. S., 1081 *et seq.*

Technically the bequest in this case is classified as void rather than lapsed. The rule stated applies, however, to either a void or a lapsed legacy. 4 Page on Wills, p. 210; 96 C. J. S. 1081.

Having in mind the foregoing principles, a careful examination of the will in all its parts satisfies us that the resi-

duary beneficiaries, three church organizations, an individual, and the "Kaler-Vaill Memorial Home," took under the terms of the will as individual or separate beneficiaries rather than as a class, as tenants in common rather than as joint tenants. We are unable to discover any clear intention on the part of the testator that the failure of one legacy should increase the shares given to the other beneficiaries. Indeed, it seems to us the direction of the testator that upon the death of his wife, the remaining estate "shall be divided into five equal parts" and one equal part given to the five named beneficiaries carries a strong implication that he did not intend to increase the share of any beneficiary beyond one-fifth of the residue.

The disputed share passes as intestate property to those entitled to receive such property under the laws of descent. At the time of his death, the testator left a widow, Addie Kaler Vaill, since deceased, and as his sole heir at law, a nephew, the defendant Frederick S. Vaill, Jr. The disputed share is to be distributed equally to the estate of Addie Kaler Vaill and Frederick S. Vaill, Jr.

> *Case remanded to the Supreme Judicial Court in Equity for a decree in accordance with this opinion. Costs, and reasonable fees to counsel for the executors and the several defendants to be fixed by the sitting justice, paid by said executors from the disputed one-fifth share and charged in its probate account.*